**In re Jerry D. WHEAT S.S.# 575–52–5085, Debtor.**

**Bankruptcy No. 92–13222–BKC–AJC.**

United States Bankruptcy Court, S.D. Florida.

Dec. 3, 1992.

Peter D. Spindel, c/o De Zayas & Spindel, P.A., Coconut Grove, FL, for debtor.

Ashley L. Diener, c/o Ashley L. Diener & Associates, P.A., Hialeah, FL, for creditor.

Arthur Weitzner, Trustee, Miami, FL.

## ORDER OVERRULING CYNTHIA WHEAT'S OBJECTION TO DEBTOR'S CLAIMED EXEMPTION OF DEFERRED COMPENSATION PLAN

A. JAY CRISTOL, Bankruptcy Judge.

THIS CAUSE was heard August 18, 1992 on Cynthia Wheat's objection to the Debtor's claimed exemption of his City of Miami deferred compensation plan (the "Plan").

On July 31, 1992 Cynthia Wheat (the "Creditor") filed an objection to the Debtor's claimed exemption of his Plan.[1] The Plan is a benefit of the Debtor's employment with the City of Miami Police Department. It is funded solely by the Debtor through voluntary and regular wage deductions. The Debtor argues that, pursuant to 11 U.S.C. § 541(c)(2), the Plan is not property of the estate and that, even if it were, it is exempt under 11 U.S.C. § 522(b) and Florida Statute §§ 185.25 & 222.11.[2]

*11 U.S.C. § 541(c)(2)*

I. "A restriction on the transfer of a beneficial interest of the debtor in a trust that is enforceable under applicable non-bankruptcy law is enforceable in a case under this title[,]" 11 U.S.C. § 542(c)(2), and does not become property of the estate, 11 U.S.C. § 542(c)(1) ("Except as pro-

vided in [§ 541(c)(2)], an interest of the debtor in property becomes property of the estate ...". The Debtor and Creditor argue at great lengths over whether the Debtor's Plan contains a transfer restriction which is enforceable under state spendthrift trust law and, thus, satisfies the requirements of 11 U.S.C. § 541(c)(2). Their arguments focus primarily on the Debtor's degree of control over his interest in the Plan. However, the Debtor's degree of control is irrelevant in this case since one cannot create a spendthrift trust for oneself in Florida.

A spendthrift trust is defined to be those trusts that are created with a view of providing a fund for the maintenance of *another*, and at the same time securing it against his own improvidence or incapacity for self-protection. The provisions against alienation of the trust fund by the voluntary act of the beneficiary, or invitum by his creditors, are the usual incidents of such trusts. 26 Am. & Eng. Ency.Law (2d Ed) p. 138 and authorities cited.

*Croom v. Ocala Plumbing & Electric Co.,* 62 Fla. 460, 57 So. 243, 244 (1911) (emphasis added) (facts did not involve an attempt to create a spendthrift trust for oneself). *Accord Waterbury v. Munn,* 159 Fla. 754, 32 So.2d 603, 605 (1947) (facts did not involve an attempt to create a spendthrift trust for oneself); *In re Lichstrahl,* 750 F.2d 1488, 1490 (11th Cir.1985); *Matter of Witlin,* 640 F.2d 661, 663 (5th Cir. Unit B March 1981).

The Court notes that the cases examined, which prohibit creating a spendthrift trust for oneself, involved settlor-beneficiaries with much more control over their interests than the Debtor. *See Id.; Fehlhaber v. Fehlhaber,* 850 F.2d 1453, 1454–5 (11th Cir. 1988). Moreover, the policy against such

---

**1.** The Debtor and Creditor are in the process of dissolving their marriage. Subsequent to the state court's order that the Debtor make support payments to the Creditor, the Debtor filed a motion in state court to reduce said payments. Consequently, the Creditor argues that the Debtor's interest in the Plan is property of the bankruptcy estate. It is not clear whether the Credi-

tor is seeking to reach the Debtor's interest in the Plan in the state court proceeding.

**2.** Previously, the Debtor argued that the Plan was also exempt under Fla.Stat. § 222.21 ("Exemption of pension money and retirement or profit-sharing benefits from legal processes"). Now, however, the Debtor concedes that this argument is without merit.

spendthrift trusts is heavily dependent upon a settlor-beneficiary's control. *See, e.g., Fehlhaber,* 850 F.2d at 1455 ("[I]t is against public policy to permit a man to tie up his property in such a way that he can enjoy it but prevent his creditors from reaching it."); *Matter of Witlin,* 640 F.2d at 663 ("There is, of course, a strong public policy that will prevent any person .from placing his property in what amounts to a revocable trust for his own benefit which would be exempt from the claims of his creditors."). Thus, the stated policy against self-settled spendthrift trusts is not as compelling in situations where, as here, the settlor-beneficiary's control is relatively limited.[3]

II. In *Patterson v. Shumate,* 504 U.S. ——, 112 S.Ct. 2242, 119 L.Ed.2d 519 (1992), the Supreme Court held that, pursuant to 11 U.S.C. § 541(c)(2), a debtor's interest in an ERISA qualified pension plan

did not become property of the estate. More specifically, the Supreme Court held that the phrase "applicable nonbankruptcy law" was not limited to state spendthrift trust law, but includes any relevant federal or state law. 11 U.S.C. § 541(c)(2). The Debtor argues that his Plan is sufficiently similar to the *Patterson* plan that it is, likewise, not property of the estate.[4]

A. The first issue in determining whether 11 U.S.C. § 541(c)(2) applies to the Debtor's Plan is whether there is "[a] restriction on the transfer of a beneficial interest of the debtor in a trust". Sections 9.08 and 9.09 of the Debtor's Plan (see footnote # 4), clearly impose "[a] restriction on the transfer of a beneficial interest of the debtor in a trust" within the meaning of 11 U.S.C. § 541(c)(2). In addition, although not expressed as clearly or forcefully as the language in the *Patterson* plan (see footnote

---

**3.** Section 8.01 of the Debtor's Plan provides that earliest the Debtor can reach his interest in the Plan is:

 (a) The date on which the PARTICIPANT separates from service, or
 (b) The date on which the PARTICIPANT attains age 70½ or terminates deferrals under this Plan, whichever is later.

Additionally, under § 8.04 of the Plan, the Debtor becomes entitled to so much of his interest in the Plan as is necessary to relieve an "unforeseeable emergency". Sections 1.01(*o*) & 8.04 define "unforeseeable emergency" as:

 severe financial hardship to the PARTICIPANT resulting from a sudden and unexpected illness or accident of the PARTICIPANT or a dependent (as defined in IRC Section 152(a)) of the PARTICIPANT, loss of the PARTICIPANT'S property due to casualty, or other similar or extraordinary and unforeseeable circumstances arising as a result of events beyond the control of the PARTICIPANT. ["Unforeseeable emergency does not include f]oreseeable personal expenditures normally budgetable, such as a down payment on a home, the purchase of an automobile, college or other educational expenses ...

**4.** The Court agrees that the language of the Debtor's Plan is similar in effect to the language of the *Patterson* plan. The anti-alienation provision of the *Patterson* plan provided that "[n]o benefit, right or interest of any participant shall be subject to alienation, sale, transfer, assignment, pledge, encumbrance or charge, seizure, attachment or other legal, equitable or other process." *Id.* (internal quotation marks omitted). The enforcement provision of the *Patterson* plan allowed "[a] plan participant, benefi-

ciary, or fiduciary ... [to] file a civil action to enjoin any act or practice which ... violates the terms of the plan. *Id.* (internal quotation marks omitted). The Debtor's Plan provides:

 § 9.08. The rights of the PARTICIPANT under this Plan shall not be subject to the rights of creditors of the PARTICIPANT or any Beneficiary, and shall be exempt from execution, attachment, prior assignment, or any other judicial relief or order for the benefit of creditors or other third persons.
 § 9.09. It is agreed that neither the PARTICIPANT nor his Beneficiary nor any other designee shall have any right to commute, sell, assign, pledge, encumber, transfer, or otherwise convey the right to receive any payments hereunder which payments and right thereto are expressly declared to be nonassignable and nontransferable.
 § 9.11. This Plan and any properly adopted amendments, shall be binding on the parties hereto and their respective heirs, administrators, trustees, successors, and assignees and on all Beneficiaries of the PARTICIPANT.
 § 10.04. The EMPLOYER, or its agents including the Administrator, if in doubt concerning the correctness of their action in making a payment of a benefit, may ... allow the filing in any State court of competent jurisdiction, a suit in such form as they consider appropriate for a legal determination of the benefits to be paid and the persons to receive them. The EMPLOYER shall comply with the final orders of the court in any such suit and the PARTICIPANT, for himself and his Beneficiary, consents to be bound thereby insofar as it affects the benefits payable under this Plan or the method of payment.

# 4), § 7.04 of the Debtor's Plan also imposes "[a] restriction on the transfer of a beneficial interest of the debtor in a trust" within the meaning of 11 U.S.C. § 541(c)(2).[5] Section 7.04 the Debtor's Plan provides, with emphasis added:

> 7.04. *All assets of the Plan,* including all deferred amounts, property and rights purchased with deferred amounts, and all income attributable to such deferred amounts, property or rights, *shall remain* (until made available to the PARTICIPANT or Beneficiary) *solely the property and rights of the EMPLOYER* (without being restricted to the provision of benefits under the Plan), *subject only to the claims of creditors of the EMPLOYER.* Contracts and other evidences of investments of all assets under this Plan shall be registered in the name of the EMPLOYER which shall be the owner and beneficiary thereof. The rights of the PARTICIPANT created by this Plan shall be those of a general creditor of the Employer, and in an amount equal to the fair market value of the deferred account maintained with respect to the PARTICIPANT. The PARTICIPANT acknowledges that his rights are no greater than those of a general creditor of the EMPLOYER and that in any suit for an accounting, to impose a constructive trust, or to recover any sum under this Plan, the PARTICIPANT'S rights are limited to those of a general creditor of the EMPLOYER. The EMPLOYER acknowledges that the Administrator is the agent of the EMPLOYER.

■ B. Having determined that the Debtor's Plan imposes "[a] restriction on the transfer of a beneficial interest of the debtor in a trust" within the meaning of 11 U.S.C. § 541(c)(2), the Court must now determine whether such restriction is "enforceable under applicable nonbankruptcy law" within the meaning of this section. In addition to state spendthrift trust law, which the Court found the Debtor's Plan to be unenforceable under, the Debtor argues that his Plan is enforceable under state contract law and federal law. The Debtor's argument that §§ 9.08, 9.09, 9.11, & 10.04 of his Plan (see footnote # 4) are enforceable under state contract law is without merit. State contract law is not "applicable nonbankruptcy law" for purposes of 11 U.S.C. § 541(c)(2).[6] *See* 11 U.S.C. § 541(c)(2) ("A restriction on the transfer of a beneficial interest of the debtor *in a trust* that is enforceable under applicable nonbankruptcy law ...") (emphasis added).

■ Unlike the *Patterson* Plan, the Debtor's Plan is not governed by ERISA. *See* 29 U.S.C. § 1003(b)(1) ("The provisions of this title shall not apply to any employee benefit plan if—(1) such plan is a governmental plan ..."). The Debtor's Plan is,

---

5. The connection between the Debtor's Plan and Article IV ("Pension and Retirement Plans"), Division 2 ("City of Miami Fire Fighters' and Police Officers' Retirement Trust"), Section 40–215 ("Assignments Prohibited") of the City of Miami Code has not been made clear to the Court. Section 40–215 of the City of Miami Code provides, with emphasis added:

    The present or future right of a person to moneys in the fund or to a retirement allowance, an optional allowance, a death benefit, the return of contributions, or any other right accrued or accruing to any person under the provisions of this division, shall be unassignable and shall not be subject to execution, garnishment, attachment, the operation of bankruptcy or insolvency law or any other process of law whatsoever, *except with respect to alimony, child support, or medical payments to a former spouse.*

    Even assuming that this language supersedes the Debtor's Plan to the extent that the Plan is inconsistent, the Court adheres to its characterization of the Plan as imposing a transfer restriction within the meaning of 11 U.S.C. § 541(c)(2). Despite its exception for certain payments to a former spouse (see footnote # 1), § 40–215 of the City of Miami Code imposes "[a] restriction on the transfer of a beneficial interest of the debtor in a trust" within the meaning of 11 U.S.C. § 541(c)(2). In *Patterson,* a similar exception to the anti-alienation provision existed and the Supreme Court found that the provision qualified under 11 U.S.C. § 541(c)(2). *See* 29 U.S.C. § 1056(d).

6. Moreover, the transfer restriction would not be enforceable under state contract law against people not party to the contract. Since the transfer restriction would not enforceable against people not party to the contract, such as creditors of the participant, it would no longer be a "restriction on the transfer of a beneficial interest of the debtor in a trust" for purposes of 11 U.S.C. § 541(c)(2).

however, governed by 26 U.S.C. (I.R.C.) § 457 ("Deferred compensation plans of state and local governments and tax-exempt organizations."). *See, e.g.,* Debtor's Plan §§ 1.01(e), 2.04, 2.06, & 4.01–.02. Section 457(b) of the Internal Revenue Code ("Eligible deferred compensation plan defined.") provides, *inter alia* and with emphasis added:

> For purposes of this section, the term "eligible deferred compensation plan" means a plan established and maintained by an eligible employer—
>
> (6) which provides that—
>
> (A) all amounts of compensation deferred under the plan,
>
> (B) all property and rights purchased with such amounts, and
>
> (C) all income attributable to such amounts, property, or rights,
>
> *shall remain* (until made available to the participant or other beneficiary) *solely the property and rights of the employer* (without being restricted to the provision of benefits under the plan), *subject only to the claims of the employer's general creditors.*

Section 7.04 of the Debtor's Plan, contains language virtually identical to I.R.C. § 457(b)(6). Consequently, the Debtor argues that this language is enforceable under applicable federal law. The Court agrees.

Section 7.04 of the Debtor's Plan was obviously drafted pursuant to federal law, I.R.C. § 457(b)(6). Unlike I.R.C. § 401(a)(13) which is expressly enforceable through ERISA, 29 U.S.C. §§ 1104(a)(1)(D) & 1132(a)(3) & (5), I.R.C. § 457 is not supplemented with similar legislation providing an enforcement mechanism of the transfer restriction it authorizes. However, where there is a right there is a remedy for a right without a remedy is not a right. Furthermore, were the Court to hold unenforceable the language contained in I.R.C. § 457(b)(6) and the corresponding section of the Debtor's Plan, § 7.04, the Debtor's Plan would not qualify under I.R.C. § 457. This would nullify I.R.C. § 457. Thus, the Court holds that I.R.C. § 457(b)(6) and the corresponding section of the Debtor's Plan,

§ 7.04, imposes "[a] restriction on the transfer of a beneficial interest of the debtor in a trust that is enforceable under applicable nonbankruptcy law ..." 11 U.S.C. § 541(c)(2). Hence, the Debtor's interest in his Plan is not property of the estate pursuant to 11 U.S.C. § 541(c)(2).

*Florida Statute § 185.25*

■ The purpose of Chapter 185 of Florida Statutes ("Municipal Police Officers' Retirement Trust Funds") is

> to provide a uniform retirement system for the benefit of police officers as hereinafter defined and intends, in implementing the provisions of s. 14, Art. X of the State Constitution as they relate to municipal police officers' retirement trust fund systems and plans, that such retirement systems or plans be managed, administered, operated, and funded *in such manner as to maximize the protection of police officers' retirement trust funds.*

Fla.Stat. § 185.01 ("Legislative declaration") (emphasis added). Florida Statute § 185.25 ("Exemption from execution") provides, with emphasis added:

> The pensions, annuities, *or any other benefits accrued or accruing to any person under the provisions of this chapter* and the accumulated contributions and the cash securities in the funds created under this chapter are hereby exempted from any state, county or municipal tax of the state and *shall not be subject to execution or attachment or to any legal process whatsoever and shall be unassignable.*

The Creditor argues that the Debtor's Plan is not exempt pursuant to Fla.Stat. § 185.25 in light of this Court's holding in *In re Harrington,* 70 B.R. 301 (Bankr. S.D.Fla.1987) (Cristol, J.). However, the *Harrington* case has no bearing on the issue of whether the Debtor's Plan is exempt pursuant to Fla.Stat. § 185.25 since the plan at issue in *Harrington* was not a plan under Chapter 185 of Florida Statutes. *Id.* at 303 ("The F.S. 185 fund was not garnished by Defendant and is not the subject of this preference litigation."). The Debtor's Plan appears to be a "[benefit]

accrued or accruing to [a] person under the provisions of this chapter" within the meaning of Fla.Stat. § 185.25.[7] Moreover, the Creditor has not alleged, let alone proven, otherwise. *See* Fed.R.Bankr.P. 4003(c) ("[T]he objecting party has the burden of proving that the exemptions are not properly claimed."). Hence, the Debtor's interest in his Plan is exempt pursuant to Fla.Stat. § 185.25.

*Florida Statute § 222.11*

 Florida Statute § 222.11 ("Exemption of wages from garnishment") provides:

> No writ of attachment or garnishment or other process shall issue from any of the courts of this state to attach or delay the payment of any money or other thing due to any person who is the head of family residing in this state, when the money or other thing is due for the personal labor or services of such person. As used in this section, the term "head of family" includes any unmarried, divorced, legally separated, or widowed person who is providing more than one-half of the support for a child or other dependent. This exemption shall apply to any wages deposited in any bank account maintained by the debtor when said funds can be traced and properly identified as wages.

In *Harrington,* this Court held that monies contributed to a debtor's retirement fund by the debtor and his employer were not exempt pursuant to Fla.Stat. § 222.11 since the fund could not be characterized as wages. 70 B.R. at 302–03. Similarly, the court in *In re Morrow* held that wages contributed to an ERISA plan lost such character and were not exempt pursuant to Fla.Stat. § 222.11. 122 B.R. 151, 156 (Bankr.M.D.Fla.1990) ("Clearly, contributions made to an ERISA plan are not akin to wages deposited for savings or everyday living expenses in a bank account."). The Court continues to believe that this is the proper construction of "wages" ("money or other thing due for the personal labor or services . . .") within the meaning of Fla. Stat. § 222.11. Moreover, the Debtor's Plan is not exempt under the final sentence of Fla.Stat. § 222.11 since the Court has determined that the funds in the Debtor's Plan are not wages, and, the funds have not been "deposited in any bank account maintained by the debtor". Hence, the Debtor's interest in his Plan is not exempt pursuant to Fla.Stat. § 222.11. Accordingly, it is

ORDERED that Cynthia Wheat's objection to the Debtor's (Jerry D. Wheat, S.S.# 575–52–5085) claimed exemption of his City of Miami deferred compensation plan is overruled since:

1) under 11 U.S.C. § 541(c)(2), the Plan is not property of the estate, and

2) even if the Plan were property of the estate, the Creditor has not met her burden of proving that the Plan is not exempt under Florida Statute § 185.25.

DONE AND ORDERED.

---

**7.** Although the Creditor has not argued that even if Fla.Stat. § 185.25 applies, the Debtor's interest in his Plan is not exempt from her claim due to it's alleged support nature (see footnote # 1), the Court feels compelled to discuss this issue. In *Alvarez v. Bd. of Trustees,* 580 So.2d 151 (Fla.1991), the Supreme Court of Florida held that Fla.Stat. §§ 61.1301 and 61.-046(4), "which, respectively, mandate the entry of income deduction orders for court-ordered alimony and child support and define the 'income' subject to such orders, implicitly repeal" Fla.Stat. § 175.241. Florida Statute § 175.241 is virtually identical to Fla.Stat. § 185.25 except that it applies to firefighters' pension benefits instead of police officers'. Thus, the *Alvarez* holding is equally applicable to Fla.Stat. § 185.-25. However, the Creditor does not argue that her claim exists pursuant to Fla.Stat. §§ 61.1301 and 61.046(4).

The Court's decision to hold the Debtor's interest in his Plan exempt pursuant to Fla.Stat. § 185.25 is founded upon sound policy. Were the Court to hold that the Debtor's interest in his Plan is property of the estate, creditors without support claims, which would not otherwise be able to reach the Debtor's interest in his Plan, would diminish the funds which would otherwise be available for a creditor with a support claim. In order to carry out the policy of insuring that creditors with support claims are provided for, such creditors should bring an action pursuant to 11 U.S.C. § 523(a)(5) (exception to discharge for debts for alimony, maintenance, or support) and file an action pursuant to Fla. Stat. §§ 61.1301 and 61.046(4).