**In re Richard R. STANDEL, Jr., Debtor.**

**Bankruptcy No. 394–34693–HCA–11.**

United States Bankruptcy Court,
N.D. Texas,
Dallas Division.

Aug. 7, 1995.

---

William E. Long, McDonnell Dyer, Professional Ltd. Co., Nashville, TN, John J. Lewis, Lewis & Associates, Dallas, TX, for Resolution Trust Corp.

Vernon O. Teofan, Larry Chek and J. Scott Rose, Jenkens & Gilchrist, P.C., for debtor.

Rosa R. Orenstein, Orenstein & Simmons, P.C., Dallas, TX, for United Lending Companies, Inc.

Robert Newhouse, Chapter 7 Trustee, Dallas, TX.

Mary Frances Durham, Office of U.S. Trustee, Dallas, TX.

Russell Mills, Miller, Hiersche, Martens & Hayward, P.C., Dallas, TX.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

HAROLD C. ABRAMSON, Bankruptcy Judge.

Came before the Court objections to the Debtor's exemptions at a hearing on May 19, 1995. Although several objections to the Debtor's exemptions were filed, counsel for the Debtor represented to the Court that only one objection remains for determination by the Court—the objection of the Resolution Trust Corporation ("RTC"), as Receiver for Metropolitan Federal Savings and Loan Association, F.A.,[1] to the Debtor's claim that his Northern Telecom Deferred Compensation Plan is exempt. Thus, at the hearing on the objections on May 19th, the Court heard argument only on this objection of the RTC and took the matter under advisement. After considering the relevant pleadings and the oral argument of counsel, the Court now makes the following findings of fact and conclusions of law.

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 & 1334. The matter is a core proceeding pursuant to § 157(b)(2)(A), –(B), & –(O).

## FINDINGS OF FACT

### Background of the Proceedings

On August 2, 1994 ("Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 7 of Title 11 of the United States Code. He also filed his Original Schedules and Statement of Financial Affairs ("Original Schedules and/or Statement").

Schedule C of the Schedules required the Debtor to answer certain questions regarding the property he claims to be exempt. First, the Debtor had to make the election provided by 11 U.S.C. § 522(b), which requires the Debtor to choose between the exemptions provided by 11 U.S.C. § 522(d) and the exemptions provided by nonbankruptcy federal law and state and local law ("State Law Exemptions"). The Debtor elected the State Law Exemptions. Next, the Debtor had to list the property that he claimed to be exempt, name the specific law providing for the exemption of that property, and provide information about the value of the exemption. On his Original Schedule C, the Debtor included a "Northern Telecom, Inc. Deferred—Compensation Retirement Plan" (the "Deferred Compensation Plan" or "Plan"), which he stated was exempt pursuant to Texas Insurance Code 21.22. He valued the Plan at approximately $260,000. On September 15th and December 28th of 1994, the Debtor filed amendments to Schedule C, which added the following additional legal bases in support of his claim that the Plan was exempt property—Texas Property Code §§ 42.001 & –.0021 and § 28 of Article 16 of the Texas Constitution.

On October 15, 1994, the RTC filed a timely objection to the Debtor's claimed exemption of the Deferred Compensation Plan. The Debtor and the RTC have stipulated that the objection is timely as to the Deferred Compensation Plan. On December 16, 1994, the Court ruled that the Debtor was a Texas resident and domiciliary from and after April 20, 1994, in conjunction with the RTC's Motion to Transfer Venue.

1. The RTC has a judgment against the Debtor in the amount of $321,868.85.

*The Deferred Compensation Plan and
the Debtor's Contributions*

The Debtor has been an employee of Northern Telecom, Inc. ("NTI") since 1977. As of the Petition Date, the Debtor occupied the positions of Vice President, General Counsel, and Secretary of NTI. As of the hearing on the objections, the Debtor still occupied these positions. Each year, the Debtor's position as a Senior Manager of NTI makes him eligible for a monetary award in addition to his salary pursuant to NTI's Senior Management Incentive Award Plan ("SMIAP Award" or "Award"). The Award is dependent upon the Debtor's performance and the performance of Northern Telecom Limited, NTI's parent company, during the year for which the Award is made. Since 1982, the Debtor has received SMIAP Awards in the following amounts:

1982 Award $19,500
1989 Award $65,600
1990 Award $80,000
1991 Award $80,000
1992 Award $80,000
1994 Award $96,250.

The Debtor is eligible to defer all or part of the SMIAP Award into NTI's Deferred Compensation Plan. The Plan, and the Debtor's right to receive money under the Plan, are governed by the "Agreement Re The Deferral Option of the Senior Management Incentive Award Plan" ("Plan Document"). The Debtor must make the election as to how much of the Award he will defer before he learns whether he will receive a SMIAP Award or not. The election form provides that the election is irrevocable. Based on the Plan Document and the evidence presented at the hearing, the Court finds that once the election is made, it is irrevocable. If the Debtor does not elect to defer the SMIAP Award, NTI pays the Award to the Debtor. Since 1982, the Debtor has participated in the Plan and has deferred the following amounts of his SMIAP Award:

1982 $19,500
1989 $16,400
1990 $20,000
1991 $80,000
1992 $80,000
1994 $96,250.

Paragraph 5 of the Plan Document provides:

5. *DEFERRAL ACCOUNT*

All awards so deferred ("Deferred Compensation") plus earnings thereon shall be credited to a special account on the books of NTI ("Deferral Account"). Any amounts credited to Employee in a Deferral Account shall not be held by NTI in a trust or similar fiduciary capacity and neither Employee nor Employee's legal representative shall have any right against NTI with respect to any portion of the monies recorded in a Deferral Account except as a general unsecured creditor of NTI.

The Debtor and the RTC have stipulated that NTI does not hold any funds in trust or similar fiduciary capacity. In addition, NTI does not contribute any amounts to the Debtor's Deferral Account. Rather, the Deferral Account represents amounts payable to, and deferred by, the Debtor under SMIAP, plus interest, pursuant to the Deferred Compensation Plan and Plan Document.

The Deferred Compensation Plan is maintained by NTI primarily for the purpose of providing deferred compensation for a select group of management or highly compensated employees. The parties have stipulated that the Plan is not ERISA-qualified. The funds are available for distribution on the employee's retirement, disability, death, or other voluntary or involuntary termination. *See generally* Plan Document. In addition, the Plan provides that the employee may apply to the Management Resources and Compensation Committee of the Northern Telecom Limited Board of Directors ("Committee") for a distribution in the event of financial hardship. The grant of the application is solely within the discretion of the Committee. *Id.* at ¶ 9. The Court finds, however, that the major purpose of the NTI Deferred Compensation Plan is to provide senior management employees an additional means of deferring income for retirement. A related goal of the Plan is that the deferral of income into the Plan will allow the employee to realize a tax benefit in that, when the income

is actually taxed, the retired employee will be in a lower tax bracket.[2]

### Payment Options

Paragraph 7(a) of the Plan Document provides that, except as provided elsewhere in the Plan Document, the "Employee's total Deferred Compensation and all accrued earnings thereon credited to Employee's Deferral Account shall be paid to Employee in accordance with the 'Payment of Benefit Election Form'...." As early as April 29, 1988, and probably earlier, the Debtor elected to receive his deferred compensation in 180 equal monthly installments.

Paragraph 7 provides two alternative methods for determining the amount of the monthly installment. The first method requires NTI to contact a U.S. insurance company that is mutually acceptable to the Debtor and NTI and obtain a quote as to what the monthly installment would be if NTI were to invest the funds in the Debtor's Deferred Compensation Plan with the insurance company by purchasing a term certain annuity over the term selected by the Employee on his Payment of Benefit Election Form. Plan Document ¶ 7(c). NTI is not required to purchase the annuity, but is only to use the quote to set the monthly installment payment that the Debtor is to receive. Paragraph 7(d) provides an alternative for computing the monthly installment. The alternative method only applies if the Debtor elects it prior to a certain date, described in the Plan Document, or if the Debtor and NTI cannot agree on the insurance company discussed in paragraph 7(c). *See* Plan Document ¶¶ 7(d) & –(e). The alternative provides that the monthly installment is to be determined by dividing the amount in the Deferred Compensation Plan by the number of monthly payments to be made. In addition, the monthly payment is to be recalculated each year that funds remain in the Plan. *See* Plan

Document ¶ 7(d) (describing in detail how the monthly payments are to be calculated).

Under certain circumstances, the Debtor can receive lump sum payments from the Plan and Plan Document:

(a) *Disability*—the Debtor has the option to receive a lump sum payment in the event he is determined to have a permanent disability, as discussed in Paragraph 11 of the Plan Document;

(b) *Financial Hardship*—in the event the Debtor applies for and receives approval for a hardship distribution;

(c) *Voluntary or involuntary termination of employment*—the Debtor is to receive a lump sum distribution of all amounts in his Deferral Account within 30 days if he voluntarily terminates his employment with NTI, or if he is involuntarily terminated and NTI rejects his request to pay the funds in installments.[3]

Paragraph 12(a) of the Plan Document provides that the Plan Document and the Debtor's right to receive any accounts payable pursuant to the Plan Document are not assignable or transferable except on the Debtor's death. *See* Plan Document ¶¶ 10 & 12.

### CONCLUSIONS OF LAW

Section 541 of Title 11 of the United States Code ("Bankruptcy Code") provides that all property in which the debtor has a legal or equitable interest becomes property of the estate upon the filing of the bankruptcy. The Bankruptcy Code also provides, however, that the debtor can exempt certain property from the claims of his creditors pursuant to 11 U.S.C. § 522. The Bankruptcy Code provides two different exemption schemes, described in the Findings of Fact *supra*. Texas debtors may choose either the exemptions pursuant to 11 U.S.C. § 522(d), as provided by § 522(b)(1), or the exemptions available to them pursuant to state and local law,

---

**2.** The Court does not intend to comment on the tax-treatment of the funds in the Plan under the Internal Revenue Code. Evidence was presented at the hearing, however, that tax savings for the employee are one goal of the Deferred Compensation Plan.

**3.** The Plan document provides that such termination does not include termination of employment because of retirement, as described in ¶ 8 of the Plan Document; death; permanent disability; or resignation to work for an "Affiliate" of Northern Telecom, as the term is defined in ¶ 7(b)(iii) of the Plan Document.

as provided by § 522(b)(2). *Walden v. McGinnes (In re Walden)*, 12 F.3d 445, 448 (5th Cir.1994), citing *Matter of Volpe*, 943 F.2d 1451, 1452 (5th Cir.1991).

As noted in the Findings of Fact, the Debtor elected the exemptions available to him pursuant to state and local law. The part of § 522(b)(2) relevant to the Court's evaluation of the Deferred Compensation Plan provides that a debtor may exempt from property of the estate property that is exempt under federal nonbankruptcy law or state or local law "that is applicable on the date of the filing of the petition at the place in which the debtor's domicile has been located for the 180 days immediately preceding the date of the filing of the petition, or for a longer portion of such 180–day period than in any other place." 11 U.S.C. § 522(b)(2)(A). The Court has found previously that the Debtor has been a Texas resident and domiciliary from and after April 20, 1994. Thus, as the Debtor filed his bankruptcy petition on August 2, 1994, the appropriate state law for purposes of § 522(b)(2) is the law of the State of Texas.

■ In deciding whether the Deferred Compensation Plan is exempt, the Court is guided by the strong Texas policy that exemptions are to be liberally construed in favor of the claimant. *Walden*, 12 F.3d at 448, citing *Hickman v. Hickman*, 149 Tex. 439, 234 S.W.2d 410, 413–14 (1950). The Court cannot ignore this strong and long-standing state policy. With this policy in mind, the Court will consider the first basis for the Debtor's claim that the Deferred Compensation Plan is exempt.

### Texas Insurance Code, Article 21.22

■ The Debtor first claims that Article 21.22 of the Texas Insurance Code provides an exemption for the Deferred Compensation Plan. Article 21.22 provides in relevant part, as follows:

Sec. 1. [A]ll money or benefits of any kind, including policy proceeds and cash values, to be paid or rendered to the insured or any beneficiary under any policy of insurance or annuity contract issued by a life, health or accident insurance company, including mutual and fraternal insur-

ance, or under any plan or program of annuities and benefits in use by any employer or individual, shall:

\* \* \* \* \* \*

(2) be fully exempt from execution, attachment, garnishment or other process; [and]

\* \* \* \* \* \*

(4) be fully exempt from all demands in any bankruptcy proceeding of the insured or beneficiary.

Tex.Ins.Code Ann. art. 21.22, § 1 (Vernon Supp.1995). The funds in the Deferred Compensation Plan are clearly money that is to be paid to the Debtor. The Deferred Compensation Plan does not involve an annuity contract issued by a life, health, or accident insurance company. Thus, the Plan can only be exempt if the Court finds that the Deferred Compensation Plan qualifies "as a plan or program of annuities and benefits in use by any employer...." *Id.*

The RTC contends that the Deferred Compensation Plan does not qualify for the exemption because NTI did not purchase an annuity and because the Plan does not constitute a plan or program under the statute. The RTC points out that NTI does not hold funds with which it could buy an annuity. It also points out that, in all the cases involving annuities and applying Article 21.22, there was a purchased annuity at issue. Finally, citing the case of *Young v. Adler (In re Young)*, 806 F.2d 1303 (5th Cir.1987), the RTC states that the Deferred Compensation Plan is more like an account receivable than an annuity.

The Court does not find the RTC's arguments to be persuasive. The statute does not explicitly require the purchase of an annuity. The Texas Legislature does not define "annuity." *Black's Law Dictionary* defines an annuity as "[a] right to receive fixed, periodic payments, either for life or for a term of years...." *Black's Law Dictionary* (6th ed. 1990); *see also Young*, 806 F.2d at 1306 (citing *Black's Law Dictionary* definition). In addition, the RTC's reading of the statute seems to render the second half of the statute, referring to employer plans or

programs, to be superfluous. The first half of the statute, which refers to "annuity contract[s] issued by ... insurance compan[ies]," covers purchased annuity contracts. Tex.Ins.Code Ann. art. 21.22, § 1. The second half of the statute refers to "all money or benefits of any kind ... to be paid ... under *any plan or program of annuities and benefits in use by any employer*...." *Id.* (emphasis added). If the Texas Legislature wanted to exempt only purchased annuity plans, there was no need to add the additional language about employer plans. The Court agrees with the RTC that there are no cases precisely on point, *i.e.* applying Article 21.22 to a plan that does not include a purchased annuity. Regardless, there is little case law at all on the exemption of annuities pursuant to Article 21.22, and the objective of this Court is to predict what a Texas court would hold on the issue in light of the statutory language, relevant case law, and state policy.

The Court also finds that the *Young* case does not preclude the Deferred Compensation Plan from qualifying as an annuity under Article 21.22. The *Young* court was construing a Louisiana exemption statute that provided an exemption for "all proceeds of and payments under annuity policies or plans...." *Young*, 806 F.2d at 1306 n. 1, citing La.Rev.Stat.Ann. § 20:33 (West Supp. 1986). In that case, the annuity in question was purchased for the benefit of an attorney as part of a settlement of a lawsuit in which the attorney represented the plaintiff. *Young*, 806 F.2d at 1304–05. The attorney filed for bankruptcy and claimed the annuity payments as exempt. *Id.* at 1305. The *Young* court stated that it must "pierce the veil of th[e] arrangement" to determine whether the annuity was in fact an exempt annuity, or a nonexempt accounts receivable. 806 F.2d at 1306. The court explained as follows—

> ... The purchaser of an annuity surrenders all right and title in and to the money he pays for it. On the other hand, where a debtor agrees to pay his creditor in installments at regular intervals, the debt or principal sum itself is due to the creditor although payable only in the manner agreed upon; it is an account receivable in

which he has a property interest. Therefore, installment payment of a debt, or payments of interest on a debt, do not constitute an annuity.

*Young*, 806 F.2d at 1306–07, quoting *Commonwealth v. Beisel*, 338 Pa. 519, 13 A.2d 419, 421 (1940). The *Young* court then concluded that the debtor attorney retained an interest in not only the annuity payments but also in the remaining principal owed until the debt was paid in full such that the "so-called" annuity was in fact an account receivable that was not exempt. *Id.* at 1307.

The *Young* distinction does not apply in this case in which the Court is interpreting Texas law. *See Walden*, 12 F.3d at 450 (distinguishing *Young* in interpreting Article 21.22 of the Texas Insurance Code because *Young* discusses a Louisiana statute). The *Young* court pierced the veil of the transaction, apparently applying Louisiana law. The plain language of the Texas statute precludes the Court from piercing the transactional veil in this case. This Court has already noted the liberal policy of Texas courts in interpreting exemption statutes. The Texas Legislature could have defined the term "annuity" to clarify what arrangements the term encompassed. The Texas Legislature did not do this, however. Rather, the relevant portion of Article 21.22—"any plan or program of annuities and benefits in use by any employer"—invites an expansive, rather than a restrictive reading of the term "annuity." This Court finds no reason to scrutinize the Deferred Compensation Plan to determine whether it is an account receivable or a "true annuity." Thus, as the Court finds that the Deferred Compensation Plan constitutes an annuity for purposes of Article 21.22, the only determination that remains is whether or not the Deferred Compensation Plan constitutes a plan or program, as required by the statute.

A plan is a "method of design or action, procedure, or arrangement for accomplishment of a particular act or object." *Walden*, 12 F.3d at 451, quoting *Black's Law Dictionary* (6th ed. 1990). A program is "a plan or system under which action may be taken toward a goal." *Id.*, quoting *Webster's Ninth*

*New Collegiate Dictionary* 940 (1990). The *Walden* court noted that "it is not necessary that the plan or program provide annuities for *all* employees, or that it be of long-standing duration, or that it be of a particular type (such as for retirement)." *Id.* (footnote and citations omitted). The Court finds that the Deferred Compensation Plan is a plan or program of annuities and benefits. NTI's goal in establishing the Deferred Compensation Plan is to provide its senior employees with a benefit—a means to defer income to a later date such as retirement and possibly receive a tax benefit by doing so. The Court finds that providing compensation and benefits to employees constitutes a sufficient objective for purposes of the Article 21.22 exemption statute. In addition, the Deferred Compensation Plan is a method to accomplish the objective such that the Plan qualifies for the exemption pursuant to Article 21.22.

### Texas Property Code § 42.0021

■ The Debtor also contends that his Deferred Compensation Plan is exempt pursuant to § 42.0021 of the Texas Property Code. This section provides an exemption for

> a person's right to the assets held in or to receive payments, whether vested or not, under any stock bonus, pension, profit-sharing, or similar plan ... unless the plan, contract, or account does not qualify under the applicable provisions of the Internal Revenue Code of 1986.

Tex.Prop.Code Ann. § 42.0021 (Vernon Supp. 1995). The key issue before the Court is whether the Deferred Compensation Plan qualifies under the applicable provisions of the Internal Revenue Code of 1986.

The Debtor argues that the Plan is "qualified" pursuant to 26 U.S.C. § 451 and the Treasury Regulations and Revenue Rulings corresponding to that statutory section.[4] In short, the Debtor contends that the funds in the Plan are eligible for the exemption because the Plan "qualifies" for favorable tax treatment.[5] The Court finds, however, that the term "qualify" as it concerns pension, profit-sharing, and stock bonus plans in the Internal Revenue Code has a very specific meaning. Section 401 of Title 26 of the United States Code ("Internal Revenue Code") is specifically titled "Qualified pension, profit-sharing, and stock bonus plans." For a plan to "qualify" under the provisions of the Internal Revenue Code, it must comply with the provisions of § 401. *See, e.g.,* 26 U.S.C. § 401(a) (West Supp.1995) ("Requirements for qualification"); 26 U.S.C. § 401(k)(2) (West Supp.1995) ("Qualified cash or deferred arrangement"); *see also* Neal A. Mancoff & David M. Weiner, *Nonqualified Deferred Compensation Arrangements* § 2.01 (1993) (explaining that a plan is "qualified" under the Internal Revenue Code if it satisfies the requirements of 26 U.S.C. § 401(a)). Both §§ 401 and 451 are in the same chapter of the Internal Revenue Code. Section 401, however, is contained in a subchapter of the Internal Revenue Code called "Deferred Compensation, Etc." It is also within a part of that subchapter called "Pension, Profit–Sharing, Stock Bonus Plans, Etc." In contrast, § 451 is contained in an entirely different subchapter, "Accounting Periods and Methods of Accounting." Section 451 does not discuss plans at all, but simply provides the general rule for determining the taxable year of items of gross income. Neither § 451, nor the corresponding Treasury Regulation or Revenue Ruling cited by the Debtor,[6] discusses any sort of qualified plan. The Court also finds that the phrase "qualify under the applicable provisions of the Internal Revenue Code" in § 42.0021 of the Texas Property Code is ambiguous if the Court does not interpret the meaning of the word "qualify" in light of its use and meaning in the Internal Revenue Code. As the Debtor does not contend that the Plan qualifies under § 401 of the Internal Revenue Code, the Plan is not exempt pursuant to § 42.0021 of the Texas Property Code.

---

4. Specifically, the Debtor refers to Treasury Regulation § 1.451–2 and Revenue Ruling 60–31, 1960–1 C.B. 174, modified by 64–279 and 70–435.

5. The Court makes no finding as to this statement.

6. *See supra* note 4.

## Current Wage Exemption of the Texas Constitution

■ The third basis for the Debtor's exemption of his Deferred Compensation Plan is found in the Texas Constitution: "No current wages for personal service shall ever be subject to garnishment, except for the enforcement of court-ordered child support payments." Tex. Const. art. XVI, § 28 (Vernon 1993). This exemption is codified at § 42.001(b)(1) (Vernon Supp.1995). There is no monetary limit on the amount of current wages that can be exempted. *See* Tex. Const. art. XVI, § 28; Tex.Prop.Code Ann. § 42.001(b)(1).

The Court finds that the case of *Sloan v. Douglass,* 713 S.W.2d 436 (Tex.App.—Fort Worth 1986, writ ref'd n.r.e.) controls the determination of whether or not the funds in the Deferred Compensation Plan are exempt as "current wages."[7] The *Sloan* case concerned an employment contract between the Texas Rangers, Ltd. and Mickey Rivers. *Id.* at 438. The contract provided that Rivers was to provide services from 1981 to 1985 and delineated the amount of salary he was to receive each year, in semi-monthly payments. *Id.* An addendum to the contract provided that a certain amount of salary earned in the years 1983, 1984, and 1985 was to be deferred with interest and paid out over ten years from 1986 to 1996, in equal monthly installments. *Id.* Even though Rivers voluntarily left his wages with his employer, he signed the contract before he had any control over the funds, and he had no right to receive the income until the deferred payments were due under the contract. *Id.* at 440. Thus, the *Sloan* court found that the deferred amounts of income were exempt as "current wages." *Id.*

Like the Mickey Rivers' contract, the Debtor elected to defer the income before he had control over it. The Debtor's Deferred Compensation Plan differs from the River's contract in that the actual date that the Debtor may receive the deferred income is not specified. Rather, the Debtor can receive the funds only on the happening of certain specified events. This difference from the Rivers' contract in *Sloan* does not result in the Debtor's deferred compensation losing its character as current wages. The Deferred Compensation Plan and the Plan Document do not allow the Debtor to demand payment at any time. The *Sloan* court stated that the debtor's control of the wages was an element to consider in determining whether wages are current. 713 S.W.2d at 440. The *Sloan* court then cited *Gaddy v. First National Bank,* 283 S.W. 277 (Tex.Civ. App.—Beaumont 1923, no writ) for the following statement, which the *Gaddy* court made after reviewing the relevant case law— "it was the intent of the Legislature to exempt current wages until they were due and in the possession of the earner, or upon his demand could be in his possession, and no longer." *Gaddy,* 283 S.W. at 279, cited in *Sloan,* 713 S.W.2d at 440. Significantly, the *Sloan* court also noted that the Internal Revenue Service uses control or access as a factor in determining whether or not wages are taxed as earned income and cites 26 U.S.C. § 451, Treasury Regulation § 1.451–2(a), and Revenue Ruling 60–31. *Sloan,* 713 S.W.2d at 440 n. 2. As noted *supra,* § 451 provides the general rule for determining the taxable year for an item of gross income. 26 U.S.C. § 451. The Treasury Regulation provides that "income is not constructively received if the taxpayer's control of its receipt is subject to substantial limitations or restrictions." Treas.Reg. § 1.451–2(a). The Revenue Ruling describes a deferred compensation plan similar to the Debtor's and finds that the taxpayer need only include payments received pursuant to the plan as part of gross income only when the taxpayer actually receives payments from the plan. The Court finds that the Debtor does not have control over the funds in the Deferred Compensation Plan such that the funds have lost their character as current wages. The Debtor cannot simply demand that NTI turn over the funds. Only if the Debtor meets one of the conditions discussed in the Findings of Fact can the Debtor receive possession of the funds in the Deferred Compensation Plan.

7. The Court finds it must follow *Sloan* regardless of whether or not the Court believes *Sloan* is a correct interpretation of the law. The Supreme Court of Texas had the opportunity to review the case, but chose not to do so.

In reviewing the case law, the Court has found no other cases so closely on point as *Sloan*. In addition, the Supreme Court of Texas declined to review *Sloan*. In light of these considerations, the similar factual circumstances between this case and *Sloan*, and the policy of this state, the Court finds that the funds in the Deferred Compensation Plan are exempt as current wages.

### Conclusion

The Court finds that the funds in the Debtor's Deferred Compensation Plan are exempt pursuant to Article 21.22 of the Texas Insurance Code and § 28 of Article 16 of the Texas Constitution. The Court finds that the Debtor's Deferred Compensation Plan is not exempt pursuant to Texas Property Code § 42.0021. Because the Court has found the Debtor's Deferred Compensation Plan to be exempt, the Court will not consider the remaining arguments discussed by the parties in their briefs. These arguments were based on §§ 541(a)(6) and 365(c)(1) of the Bankruptcy Code and did not address whether or not the property was exempt pursuant to state, local, or nonbankruptcy federal law. In light of the Court's findings, the Court will not reach these issues. The Court will enter an Order consistent with these Findings of Fact and Conclusions of Law.