## In re Michael J. STROUP and Susan J. Stroup, Debtors.

Bankruptcy No. 97–01231–6J7.

United States Bankruptcy Court,
M.D. Florida,
Orlando Division.

Nov. 18, 1997.

Peter N. Hill, Wolff, Hill, McFarlin & Herron, P.A., Orlando, FL, for Debtors.

Gene T. Chambers, Orlando, FL, for Trustee.

Lynnea Concannon, Orlando, FL, for Trustee.

### FINDINGS OF FACT AND CONCLU-SIONS OF LAW ON TRUSTEE'S OB-JECTION TO DEBTORS' EXEMP-TION CLAIM

KAREN S. JENNEMANN, Bankruptcy Judge.

This case came on for hearing on August 19, 1997, on the Trustee's Objection To Debtors' Claim of Exemptions (Doc. No. 26) (the "Objection") and Michael and Susan Stroups' ("Debtors") Response To Trustee's Objection (Doc. No. 32) ("Response"). Debtors claimed an exemption for deferred compensation in the amount of $118,485.63 under Florida Statute Section 222.11. In the Objection, the Trustee contends that the Debtors are not entitled to claim the deferred compensation as exempt property [1]. After considering the

---

1. The Debtors also claimed other types of proper-        ty as exempt to which the Trustee objected. The

evidence presented, reviewing the pleadings and considering the arguments of counsel and applicable law, the Objection is sustained.

*Background.* On February 14, 1997 (the "Petition Date"), the Debtors filed a joint petition for relief under Chapter 7 of the Bankruptcy Code. In their Schedule C (Doc. No. 7), the Debtors claimed an exemption pursuant to Florida Statute Section 222.11 of an unknown value[2] for deferred compensation from OB–GYN Specialists, P.A. ("OB–GYN"), a medical group that examines and treats women. One of the Debtors, Michael Stroup ("Dr. Stroup"), was a partial owner of OB–GYN as well as a practicing physician in the business.

*Employment Agreement.* Dr. Stroup and OB–GYN executed a second amended employment agreement ("Employment Agreement") on May 26, 1988. The Employment Agreement sets forth all of the rights and duties of Dr. Stroup and OB–GYN. Most importantly, Paragraph 20(a) of the Employment Agreement, titled "Salary Continuation," provided the formula for determining Dr. Stroup's deferred compensation. Trustee's Exhibit 1. Paragraph 20(a) provides in part "In the event of employee's termination of employment with [OB–GYN], ... [OB–GYN] shall pay to the employee ..., by reason of such termination and as additional compensation for his past services to [OB–GYN], a sum consisting of a portion of [OB–GYN's] reasonably collectible accounts receivable." The amount is determined as of the last day of the month preceding or coinciding with the date of termination.

The formula requires OB–GYN to calculate the reasonably collectable accounts receivable in the month before termination and multiply that number by the following fraction:

*Dr. Stroup's most recent annual compensation (including salary and bonuses)*

Total annual compensation (including salaries and bonuses)

paid by OB–GYN to all physician employees during the same annual period.

After completing this calculation, the resulting sum is discounted by five percent to cover collection costs and also is reduced by the employee's pro rata share of OB–GYN's accounts payable. In Dr. Stroup's case, the final amount due is $118,485.63 and is to be paid over a sixty month period. OB–GYN did not segregate any portion of this amount during Dr. Stroup's tenure with OB–GYN.

In the Employment Agreement, paragraph 3, titled "Salary," separately provides that OB–GYN agreed to pay Dr. Stroup $186,-000.00 per year as a salary for his services. In addition, paragraph 18, titled "Bonus," provides that OB–GYN will pay additional compensation to Dr. Stroup if OB–GYN has a financially successful year and Dr. Stroup contributed to this financial success.

*Separation Agreement.* When Dr. Stroup decided to leave OB–GYN, the parties executed a separation agreement on March 31, 1997. In the separation agreement, OB–GYN agreed to redeem Dr. Stroup's 33–1/3 shares in OB–GYN for the minimal payment of $333.33, which was the par value of the stock[3]. In addition, OB–GYN agreed to pay Dr. Stroup $118,485.63 as deferred compensation under paragraph 20 of the Employment Agreement and Dr. Stroup's base salary through March 4, 1997.[4]

*Testimony of Dr. Stroup.* Dr. Stroup testified that he is entitled to the deferred compensation, under paragraph 20(a) of the Employment Agreement, only if the Em-

---

parties have resolved all of these objections with the exception of the Trustee's remaining objection to the deferred compensation.

**2.** The amount of deferred compensation later was determined to be $118, 485.63. Trustee's Exhibit 3.

**3.** The book value of OB–GYN's stock, as of December 31, 1996, was a negative amount. Trustee's Exhibit 3. Interestingly, in determining the

book value of the stock, OB–GYN did not include the accounts receivable, valued at $1.2 million, as an asset.

**4.** Dr. Stroup's employment with OB–GYN terminated on January 3, 1997. Thus, Dr. Stroup received his base salary for approximately two months after he stopped working for OB–GYN. Trustee's Exhibit 3.

ployment Agreement is terminated or if he retires and is considered compensation in addition to his base salary. OB–GYN is treating the deferred compensation as an ordinary business expense, and Dr. Stroup will be required to reflect the payments as ordinary income on his federal tax return.

Dr. Stroup also testified that under paragraph 20 of the Employment Agreement, he is receiving his share of the accounts receivable generated from his work while at OB–GYN. However, the formula used in determining Dr. Stroup's deferred compensation makes no attempt to distinguish the dollar amount of those accounts receivable that he generated from the dollar amount of those receivables generated by the other partners in OB–GYN. Apparently, OB–GYN divided the money generated by its seven participants equally. Dr. Stroup did testify, however, that his production was generally comparable to the other physicians' receivables.

*Trustee's Objection.* The Trustee initially objected to the Debtors' exemption claim for deferred compensation because the Trustee was not provided with sufficient information to determine whether the compensation fell within the exemption pursuant to Florida Statute Section 222.11. During the hearing, the Trustee raised three new objections to the Debtors' exemption claim. First, the Trustee claimed that the deferred compensation is really a distribution from OB–GYN in view of Dr. Stroup's ownership interst and many years of service in OB–GYN. Second, Florida Statute Section 222.11 does not exempt deferred compensation. Third, the current version of Florida Statute Section 222.11 defines earnings as a "sum certain" which does not include a distribution determined by a formula[5].

■ *Exemption under Florida Statute Section 222.11 for Deferred Compensation.* The objecting party has the burden of proving that the exemptions claimed by the debt-

or are not properly claimed. Fed.R.Bankr.P. 4003(c)(1991). In this case, the Debtors are claiming an exemption pursuant to Florida Statute Section 222.11 which provides that earnings of a head of household, such as Dr. Stroup, are not subject to claims of creditors. Earnings are defined to include: "compensation paid or payable, in money of a sum certain, for personal services or labor whether denominated as wages, salary, commission, or bonus." If the deferred compensation awarded in Dr. Stroup's Employment Agreement fits within the definition of earnings under Florida Statute Section 222.11, the amount is exempt. Therefore, in order to sustain the Objection, the Trustee must show that Dr. Stroup's deferred compensation does *not* qualify as earnings from personal services. *In re Zamora,* 187 B.R. 783, 784 (Bankr.S.D.Fla.1995).

Although Florida Statute Section 222.11 was amended in 1993, prior case law interpreting the type of income protected by the statute remains applicable. *Id.* at 784. Florida bankruptcy courts are in agreement that the statute was not intended to protect earnings from passive investments. *In re Parker,* 147 B.R. 810, 812 (Bankr.M.D.Fla.1992); *See, Harrington v. Limbey (In re Harrington),* 70 B.R. 301, 303 (Bankr.S.D.Fla.1987). These courts held that monies contributed to a debtor's retirement fund by the debtor and his employer were not exempt since the funds were more like passive income than wages. *In re Wheat,* 149 B.R. 1003, 1008 (Bankr.S.D.Fla.1992), *citing Harrington v. Limbey (In re Harrington),* 70 B.R. at 302–303. These courts reasoned that Florida Statute Section 222.11 was designed to protect the "fruit of one's labor for the benefit of his family." *In re Parker,* 147 B.R. at 812; *quoting In re Locke,* 99 B.R. 473, 474 (Bankr. M.D.Fla.1989).

---

5. Neither party addressed the issue of whether the pre–1993 or the current version of Florida Statute Section 222.11 applies to this case. *See, In re Porter,* 182 B.R. 53, 55 (Bankr.M.D.Fla. 1994). Here, the deferred compensation was determined from a formula set forth in an Employment Agreement which was executed on May 26, 1988. Trustee's Exhibit I. However, the for-

mula in the Employment Agreement uses the prior year from which Dr. Stroup left OB–GYN to calculate the amount of deferred compensation. Thus, under the rationale of *In re Sloan,* the current version of Florida Statute Section 222.11 applies. 211 B.R. 766, 767 (Bankr. M.D.Fla.1997).

Florida bankruptcy courts also are in agreement that severance pay in its various forms is not considered "earnings" under the protection of Florida Statute Section 222.11. *See, In re Dennison,* 84 B.R. 846, 848 (Bankr.S.D.Fla.1988), *citing Harrington v. Limbey (In re Harrington),* 70 B.R. 301, 303 (Bankr.S.D.Fla.1987); *In re Howe,* 381 F.Supp. 1025, 1026 (N.D.Fla.1974). This is because the debtor has not performed any personal services or labor after termination which is necessary to obtain the exemption protection under Section 222.11. *Cf., In re Powers,* 98 B.R. 577, 579 (Bankr.M.D.Fla. 1989).

Two Florida bankruptcy courts have discussed the exemption of deferred compensation under the former version of Section 222.11. *In re Wheat,* 149 B.R. 1003, 1004 (Bankr.S.D.Fla.1992); *Harrington v. Limbey (In re Harrington),* 70 B.R. 301, 302 (Bankr. S.D.Fla.1987). In each of these cases, the debtors or their employers actually saved, or deferred, a portion of their annual compensation pending the employee's termination or retirement. However, in both cases, the bankruptcy court found the funds did not qualify as "wages" subject to exemption under the older version of Section 222.11.

Further, in one of the cases relied upon by Dr. Stroup, the debtor was deferring income for five years in a row before filing bankruptcy. *In re Standel,* 185 B.R. 227, 229 (Bankr. N.D.Tex.1995). In *Standel,* unlike this case, the debtor had to make an election of how much income to defer each year before he knew the amount of his income. *Id.* Once the debtor made the election, the debtor could not revoke his election to defer his compensation. *Id.* Actual earnings were segregated for the benefit of the debtor.

■ *Analysis.* The only issue raised by the Objection is whether the deferred compensation are "earnings" as defined by Section 222.11. None of the cases cited address a situation similar to this case where the deferred compensation was determined by a formula based on the amount of current ac-

counts receivable and the debtor's most recent salary.[6] *Id.* The deferred compensation in this case is a hybrid form which more resembles a severance pay or a return on Dr. Stroup's equity interest than a true payment of compensation deferred during the many years of Dr. Stroup's employment with OB–GYN. *Cf., Id.*

The deferred compensation paid to Dr. Stroup is not directly attributable to Dr. Stroup's personal services and labor. Indeed, the accounts receivables used in the formula to calculate the amount of Dr. Stroup's deferred compensation bear no direct correlation to services he performed. Moreover, OB–GYN and Dr. Stroup were not deferring or segregating income on Dr. Stroup's behalf on an annual basis. Rather, the deferred compensation is made in addition to the salary and bonuses that Dr. Stroup earned and is payable only when he leaves or retires. Thus, the deferred compensation is more akin to severance pay or a dividend as a return on Dr. Stroup's ownership interest.

Accordingly, the money Dr. Stroup is receiving is not the "fruit of his labor" which is necessary to get the protection of Section 222.11. Since the deferred compensation paid to Dr. Stroup is really severance pay or a payment in the nature of a dividend not within the protection of Section 222.11, the Trustee has established that his Objection should be sustained.

*Conclusion.* The Debtors' exemption claim for deferred compensation in the amount of $118,485.63 is not exempt from claims of creditors' under Section 222.11. The Objection is sustained. A separate order consistent with these findings of fact and conclusions of law shall be entered.

---

**6.** The fact that a formula is used to calculate the amount of the deferred compensation does not make the determination of the sum uncertain. Rather it just requires mathematical computa-

tions to arrive at a definite sum. As such, the use of a formula to calculate earnings may still result in a sum certain as required by Section 222.11.