**Herbert and Amy GOEBEL, as Next Friends and Parents of Katie Goebel and Brent Goebel, Minors, Appellants,**

v.

**William BRANDLEY, Appellee.**

No. 14–04–00510–CV.

Court of Appeals of Texas, Houston (14th Dist.).

Aug. 30, 2005.

J. Michael Fieglein, Galveston, for appellants.

Amanda Bedford, Daniel Ward Jackson, Houston, for appellee.

Panel consists of Justices EDELMAN, SEYMORE, and GUZMAN.

## OPINION

EVA M. GUZMAN, Justice.

Appellants, Herbert and Amy Goebel, as next friends and parents of Katie and Brent Goebel (collectively "Goebels"), appeal a summary judgment in favor of appellee William Brandley, claiming the trial court erred in concluding Amy Goebel's purchase of United States Savings Bonds Series EE ("savings bonds") in her children's names, through payroll deductions, was a fraudulent transfer under Texas Uniform Fraudulent Transfer Act ("TUFTA").[1] Because the parties do not dispute that Amy purchased the savings bonds with her wages, but Brandley failed to

---

1. *See* Tex. Bus. & Com.Code Ann. §§ 24.001–.012    (Vernon 2002).

establish the wages were "assets" as defined under TUFTA, we reverse the judgment of the trial court and render judgment in favor of the Goebels.

## I. FACTS AND PROCEDURAL BACKGROUND

The parties stipulated to the following facts. In January 1996, Amy entered into a voluntary payroll deduction program offered by her employer UTMB–Galveston, in which she purchased a $200 savings bond each month for her minor son, Brent. The following year, in April 1997, Amy began purchasing savings bonds through the program in the same amount for her minor daughter, Katie. At the time of their purchase, the savings bonds were issued in the children's names. Amy continued purchasing a $200 bond each month for each child through these payroll deductions until August 2003.

In March 2001, Brandley was awarded a judgment against Herbert and Amy for $37,433.52 in connection with a property dispute.[2] In August 2003, Brandley filed suit against Herbert and Amy, as next friends and parents of Katie and Brent, under TUFTA, claiming the savings bonds were fraudulently transferred to the children.

Brandley filed a summary judgment motion, asserting that (1) Amy fraudulently transferred the savings bonds after his claim arose, (2) she did not receive a reasonably equivalent value in exchange for the transfer of those assets, and (3) Amy was insolvent at the time of the transfer. The Goebels also filed a summary judgment motion claiming that there was no

transfer of assets as a matter of law because Amy purchased the savings bonds with her "current wages" which, as exempt property, are not subject to TUFTA's provisions. In his response to the their motion, Brandley incorporated the stipulation of facts executed by the parties. In addition to the facts set forth above, the stipulation included, in pertinent part, the following:

- At all times, Amy Goebel has maintained control over her participation in this voluntary payroll deduction program.
- At any time, Amy Goebel could have discontinued the payroll deduction used to purchase the savings bonds in question.
- Amy Goebel voluntarily used her wages to purchase savings bonds for Brent and Katie Goebel.
- As their parent and legal guardian, Amy Goebel has always controlled Katie and Brent Goebel's assets, including the U.S. savings bonds.
- Katie and Brent Goebel paid no value for the savings bonds.
- Amy and Herbert Goebel have been insolvent at all times since Brandley's March 6, 2001 judgment against them.

The trial court entered a final judgment, granting summary judgment to Brandley, denying the Goebels' motion, and ordering that Brandley recover $6,000 from Katie and $6,000 from Brent.[3]

## II. DISCUSSION

In their first appellate issue, the Goebels contend the trial court erred in granting

2. Herbert and Amy filed a Chapter 7 bankruptcy proceeding on May 6, 2003, two years after Brandley's judgment. At oral argument, the parties agreed the bankruptcy proceedings were completed and Brandley's debt was "discharged." The Goebels do not raise any arguments concerning the bankruptcy.

3. The total awarded, $12,000, appears to represent the value of the savings bonds at maturity, purchased from March 2001 through August 2003.

Brandley's summary judgment motion because Amy purchased the savings bonds with her wages, prior to receipt of those wages, and she began participating in the payroll deduction program several years before Brandley's judgment. They also argue that Amy never owned the savings bonds because all were purchased in the name of her children. Consequently, according to the Goebels, there was no transfer of "assets" as defined under TUFTA and, therefore, they argue in their second issue that Katie and Brent cannot be liable to Brandley for damages under that statute.

Brandley argues that Amy's participation in the payroll deduction program was entirely voluntary; therefore, because she controlled the funds used to purchase the savings bonds, those wages were not exempt as "current wages."

## A. Standard of Review

Under the summary judgment standard of review, a movant has the burden to show at the trial level that there are no genuine issues of material fact, and he is entitled to judgment as a matter of law. *KPMG Peat Marwick v. Harrison County Hous. Fin. Corp.*, 988 S.W.2d 746, 748 (Tex.1999). In determining whether there is a genuine fact issue precluding summary judgment, evidence favorable to the nonmovant is taken as true and we make all reasonable inferences in his favor. *Id.* We review a trial court's summary judgment de novo. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex.2005). A movant is entitled to summary judgment only if he conclusively proves all essential elements of his claim. *Johnston v. Crook*, 93 S.W.3d 263, 273 (Tex.App.-Houston [14th Dist.] 2002, pet. denied) (citing *MMP, Ltd. v. Jones*, 710 S.W.2d 59, 60 (Tex.1986)).

When cross-motions for summary judgment are filed, a reviewing court examines all of the summary judgment evidence presented by both sides, determines all questions presented and, if reversing, renders such judgment as the trial court should have rendered. *Bradley v. State ex rel. White*, 990 S.W.2d 245, 247 (Tex.1999); *Vill. of Pheasant Run Homeowners Ass'n v. Kastor*, 47 S.W.3d 747, 750 (Tex.App.-Houston [14th Dist.] 2001, pet. denied). Each party must carry its own summary judgment burden and neither can prevail due to the other's failure to meet that burden. *W.H.V., Inc. v. Assocs. Hous. Fin., LLC*, 43 S.W.3d 83, 87 (Tex. App.-Dallas 2001, pet. denied).

## B. Fraudulent Transfers

TUFTA provides remedies to creditors of debtors who fraudulently transfer assets under certain circumstances, as set out in the statute. *See* TEX. BUS. & COM.CODE ANN. §§ 24.005–.006, 24.008 (Vernon 2002); *see also Kaufmann v. Morales*, 93 S.W.3d 650, 653 (Tex.App.-Houston [14th Dist.] 2002, no pet.) ("The purpose of the [T]UFTA is to 'prevent fraudulent transfers of property by a debtor who intends to defraud creditors by placing assets beyond their reach.' "). Although there are different methods of establishing a claim under TUFTA, in this case Brandley acknowledges he is not asserting any claims or allegations of fraud or fraudulent intent against the Goebels. He moved for summary judgment based only on section 24.006(a) of the statute, which provides:

A transfer made or obligation incurred by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made or the obligation was incurred if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor was insolvent at that time or the

debtor became insolvent as a result of the transfer or obligation.

TEX. BUS. & COM.CODE ANN. § 24.006(a). "Transfer" is defined as every manner of "disposing of or parting with an asset or an interest in an asset," including the payment of money. *See id.* § 24.002(12).

### 1. Asset

Under TUFTA, "asset" is defined as "property of a debtor," but does not include, as it relates to this case, property to the extent it is generally exempt under non-bankruptcy law. *See id.* § 24.002(2). Section 42.001 of the Property Code expressly provides that "current wages" are exempt from garnishment, attachment, or execution. *See* TEX. PROP.CODE ANN. § 42.001(a), (b)(1) (Vernon 2000).

In his summary judgment motion, Brandley stated "[i]t is undisputed that [Amy] transferred $200 per month *in savings bonds* to both Katie and Brent every month from the date of Brandley's judgment until August, 2003." (Emphasis added). In support of his motion, Brandley attached copies of interrogatories completed by Katie and Brent indicating Amy had purchased the savings bonds for the children through the payroll deduction program.[4] In response to Brandley's summary judgment motion, and in their own subsequent motion, the Goebels argued that the property Amy transferred was her "current wages," which is exempt property falling outside the purview of TUFTA's provisions.[5]

Brandley argued in his reply that the savings bonds were not exempt, asserting it was an "irrefutable fact" Amy fraudulently transferred assets.[6] He claimed that, because Amy had the ability to stop the payroll deductions, her wages became

---

**4.** Specifically, the interrogatory was as follows:

> *INTERROGATORY NO. 4:*
> Please identify every transfer made by your parents, or at your parents' authorization or instruction, of savings bonds from January 1, 2001 to the present, including amount, date, and to whom the transfer was made.
> ANSWER: My parents, specifically my mother, has participated in an employer-sponsored payroll deduction U.S. savings bond program monthly for her children since December, 1995.

There is no explanation in the record for the discrepancy in the parties' stipulations, which stated Amy entered into the payroll deduction program in January 1996, and the response contained in the interrogatory; however, the discrepancy is inconsequential here. Another interrogatory requested Katie and Brent "identify every asset transferred to you from January 1, 2001 to the present." The children objected to this interrogatory as being overly broad and ambiguous, and did not provide a response.

**5.** As summary judgment evidence, the Goebels attached an affidavit from Amy stating she began purchasing the savings bonds through her employer's payroll-deduction program in 1996 in Brent's name, and in 1997, in Katie's name. She averred the payroll-deduction program was established several years before Brandley's judgment as a savings fund for her children, and was not intended to divert funds from any creditor. The Goebels also attached a copy of *Burns v. Miller, Hiersche, Martens & Hayward, P.C.,* 948 S.W.2d 317, 323 (Tex.App.-Dallas 1997, writ denied), in support of their claim that the wages transferred were exempt property.

**6.** Although Brandley initially alleged that the property actually transferred was the savings bonds, he does not dispute that the bonds were purchased in the children's names. *See generally* 31 C.F.R. §§ 315.15, 315.36–.39, 315.5, 315.62 (2004) (providing that savings bonds are issued only in registered form, the registration must express the actual ownership of and interest in the bond, and the registration is conclusive of ownership). Subsequent to his initial motion, Brandley correctly argued that Amy's wages were the asset transferred. *See id.;* TEX. BUS. & COM.CODE ANN. § 24.007(3) (providing that a transfer is made when it becomes effective between the debtor and the transferee).

nonexempt property. Brandley further argued that wages, once received by the wage-earner, are no longer considered exempt property and when Amy purchased the savings bonds, her wages lost their status as "current wages."

### a. current wages

Under this State's constitution, current wages are exempt from garnishment. Tex. Const. Art. XVI, § 28. Current wages are also exempt from attachment, execution or other seizure under the Property Code. See Tex. Prop.Code Ann. § 42.001(b)(1). Generally, a conveyance of exempt property may not be attacked as a fraud on creditors. *Duran v. Henderson,* 71 S.W.3d 833, 842–43 (Tex.App.-Texarkana 2002, pet. denied). The rationale underlying this rule is that the law already has removed exempt property from the reach of creditors and conveyance of the property, whether fraudulent or not, does not deprive a creditor of his rights in the property. *Id.* at 843. Under TUFTA, if the property transferred is exempt, a defrauded creditor is not afforded any relief. See Tex. Bus. & Com.Code Ann. §§ 24.002(2), 24.002(12); *Duran,* 71 S.W.3d at 843.

In this case, the stipulated facts and the case law establish that the property transferred was Amy's "current wages" and was, therefore, exempt property under TUFTA. The parties agreed that Amy purchased the savings bonds with her "wages" through the payroll-deduction program. There is no dispute that *all* the savings bonds were purchased through the program, nor any dispute that Amy never directly received the subject wages.[7] Further, the savings bonds were purchased in the children's names. Thus, under these circumstances, the assets transferred were Amy's "current wages" and, to the extent those wages failed to qualify as "current wages" as a matter of law, Brandley had the burden to prove that issue as the movant on that ground.[8]

In support of his argument that Amy's wages lost their status as exempt property, Brandley relies primarily on cases decided before 1989. Prior to that time, in determining whether wages were subject to the turnover statute,[9] some Texas courts concluded that once the wages had been paid and received by the debtor, they were no longer "current" wages. *See Burns v. Miller, Hiersche, Martens & Hayward, P.C.,* 948 S.W.2d 317, 323 (Tex. App.-Dallas 1997, writ denied). In 1989, however, the legislature overruled that line of cases by amending the turnover statute

---

7. The following was contained in the stipulation of facts: "The funds used to purchase all savings bonds at issue in this matter were wages that *either were* or could have been paid to Amy Goebel." (Emphasis added). The inclusion of "either were" cannot be considered as conclusive evidence that Amy received a paycheck for any of the subject wages. *See Rosenboom Mach. & Tool, Inc. v. Machala,* 995 S.W.2d 817, 822 (Tex.App.-Houston [1st Dist.] 1999, pet. denied) (stating that ambiguous or unclear stipulations should be disregarded by the trial court). The Goebels have consistently asserted that Amy never received the wages transferred.

8. We acknowledge that this court has previously determined that a party claiming an exemption bears the burden of proving that exemption. *See Roosth v. Roosth,* 889 S.W.2d 445, 459 (Tex.App.-Houston [14th Dist.] 1994, writ denied). But, Brandley, as the summary judgment movant, had the burden to establish Amy's wages failed to qualify as "current wages" once the parties (1) agreed that Amy's wages were transferred, and (2) that she had never directly received those wages. Because it was Brandley's contention that Amy's "control" over those wages served to strip them of their exempt status, it was his burden to prove that proposition as a matter of law.

9. *See* Tex. Civ. Prac. & Rem.Code Ann. § 31.002 (Vernon 1997 & Supp.2004–05).

to exclude current wages from its scope, except in cases involving court-ordered child support. *See Caulley v. Caulley*, 806 S.W.2d 795, 797–98 (Tex.1991); *Burns*, 948 S.W.2d at 323. Following the 1989 amendment, a court can no longer enter or enforce an order that requires the turnover of the proceeds of, or the disbursement of, property exempt under any statute. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 31.002(f) (Vernon 1997); *Burns*, 948 S.W.2d at 323.

Brandley attached copies of two cases to his motion, both unpublished, which stand for the proposition that wages deposited in a bank account lose their status as "current wages."[10] Brandley also cited to a published case, *Massachusetts Mutual Life Insurance v. Shoemaker*, 849 F.Supp. 30, 33 (S.D.Tex.1994), in which the court noted that under Texas law, "[w]ages cease to be 'current' for purposes of the exemption laws when they 'are *paid to* and *received by* the wage earner.'" (Emphasis added). And, in his appellate brief, Brandley included a cite to *Leibman v. Grand*, 981 S.W.2d 426, 435 (Tex.App.-El Paso 1998, no pet.), in which the appellate court, after acknowledging the 1989 amendment to the turnover statute and its purpose to protect wages received by the debtor, distinguished the situation present in that case as follows:

[A]n entirely different situation is presented where a judgment debtor ... voluntarily liquidates exempt personal property, such as an automobile, and holds the funds for several months before investing them in an exempt annuity. A finding that the funds realized from the sale of the vehicle are not exempt, particularly where the judgment debtor has purchased a replacement vehicle, does not defeat the purpose of the exemption provided by Section 42.002(9). To hold otherwise would permit Leibman to claim an exemption not only for his two automobiles but also for the funds realized from the sale of a third vehicle. This we decline to do.

*Id.* at 435. Based on these authorities, Brandley asks us to construe Amy's ability to stop the payroll deductions as her "receipt" of the wages.[11] Thus, Brandley's argument is in fact a "constructive receipt" argument. Brandley, however, does not cite to any authority supporting his "constructive receipt" theory. And, as indicated by the quotation from *Leibman*, the cases Brandley relies on do not support his position under the facts of this case.

Brandley also likens the purchase of the savings bonds to depositing a paycheck into a bank account and, quoting from an unpublished case, states "[f]unds in a bank

10. *See Guiberson v. Bohnefeld*, No. 05–92–03011–CV, 1993 WL 175242, at * 1 (Tex.App.-Dallas May 24, 1993, writ denied) (not designated for publication); *Tarter v. Akin & McMullen, P.C.*, No. 05–90–01563–CV, 1991 WL 284467, at *5 (Tex.App.-Dallas December 20, 1991, no writ) (not designated for publication).

11. In addition, Brandley cites to a bankruptcy case decided in 1995, which concluded that under *Sloan v. Douglass*, 713 S.W.2d 436, 440 (Tex.App.-Fort Worth 1986, writ ref'd n.r.e.), the debtor's control over the wages was "*an element* to consider in determining whether wages are current." *In re Standel*, 185 B.R.

227, 234 (N.D.Tex.1995) (emphasis added). The *Standel* court relied only on *Sloan*, a pre-amendment case, in reaching its conclusion. Regardless, *Standel* does not stand for the proposition suggested by Brandley, that is, the ability to end a payroll deduction program begun years prior to a creditor's receipt of judgment qualifies as "constructive receipt" of wages such that they lose their exempt character for purposes of TUFTA. Indeed, *Standel* indicates that the debtor's *control* over the wages is merely an *element* to consider in determining whether the wages are "current."

account, even when their stated use is to pay the mortgage on the homestead, are not exempt."[12] Whether this is a correct statement of the law is not the issue before us, however, because there is no dispute in this case that Amy did not receive the subject wages and, certainly, no dispute that Amy had not deposited those wages into her bank account.

Finally, notwithstanding the fact the cases relied on by Brandley are not binding precedent for this court, those cases also involve more obvious or egregious circumstances of purposeful avoidance of creditors than are present here. In this case, it is undisputed that Amy began the payroll deductions years before Brandley received his judgment against the Goebels. It is also undisputed that the savings bonds were issued in the children's names, and Amy never actually received the wages. Because the purpose of TUFTA is to prevent fraudulent transfers of property by a debtor who intends to defraud creditors by placing assets beyond their reach, concluding that Amy's wages are no longer exempt under these circumstances would not further this statutory purpose. *See Tel. Equip. Network, Inc. v. TA/Westchase Place, Ltd.*, 80 S.W.3d 601, 607 (Tex.App.-Houston [1st Dist.] 2002, no pet.).

In sum, Brandley has failed to establish that Amy's wages lost their exempt character for purposes of TUFTA merely because she had the ability to end the payroll deduction program. We cannot conclude, as Brandley advocates, that Amy's voluntary participation—beginning several years prior to Brandley's judgment—in a payroll deduction program to purchase savings bonds in her children's names, with wages she did not receive, qualifies as a transfer of assets under TUFTA. We sustain the Goebels' first issue presented and hold that Amy's wages deducted under

the savings bond payroll deduction program were exempt property and therefore, not "assets" as defined under TUFTA. Consequently, Katie and Brent cannot be liable to Brandley for damages under TUFTA, and therefore we sustain the Goebels' second issue. Accordingly, we reverse the trial court's judgment and render a take-nothing judgment against Brandley in the Goebels' favor.

---

**12.** Brandley cites *Tarter,* 1991 WL 284467, at *5.