CITY OF SANTA FE, Texas, Appellant

v.

Victor BOUDREAUX and Jeremy Creech, Appellees.

No. 14–06–00299–CV.

Court of Appeals of Texas, Houston (14th Dist.).

May 29, 2008.

William S. Helfand, Norman Ray Giles, Houston, for Appellant.

Gregory B. Cagle, League City, for Appellees.

Panel consists of Justices YATES, GUZMAN, and BROWN.

**OPINION**

EVA M. GUZMAN, Justice.

In this contract dispute, the home-rule City of Santa Fe, Texas (the "City") contends that a provision of the collective bargaining agreement between the City and its police department is unenforceable because it violates the City's Charter and the Texas Constitution. Specifically, the City argues that the provision allowing disciplined police officers to appeal to a Citizen's Review Committee represents an unconstitutional private delegation of legislative authority. We agree and therefore reverse and render judgment for the City.

**I. FACTUAL AND PROCEDURAL BACKGROUND**

The City of Santa Fe terminated the employment of police officers Victor Boudreaux and Jeremy Creech (the "Officers") on April 19, 2004. Under the terms of a collective bargaining agreement between the City and its police department (the "CBA"), both Officers appealed their termination. The Officers and the City then participated in a dispute resolution process. After an unsuccessful mediation, the Officers provided written notification to the City invoking the final disciplinary appeal step outlined in the CBA: a hearing conducted by a Citizen's Review Committee (the "Committee"). The hearing was scheduled for September 21, 2004. The members of the Committee, the City, and the Officers appeared for the hearing, but a third officer who was also appealing a disciplinary action failed to appear. Consequently, the hearing was postponed.

On October 14, 2004, the City Attorney advised the City that the CBA provision providing for an appeal to the Committee conflicted with Texas law and the City Charter. The City informed the Officers that it would not participate further in the appeal process. Nevertheless, the Officers rescheduled the hearing before the Committee for November 23, 2004 and notified the City and the Committee members accordingly. The City responded by informing the Committee members that the City would not participate. The Officers appeared for the November hearing, but the City and the Committee members did not.

The Officers then filed a new grievance alleging that the City interfered with the Officers' contractual rights of appeal under the CBA by expressing its opinion to the Committee members that such an appeal conflicted with Texas law and the City Charter. The City responded that no contractual violation had occurred and refused to participate in the arbitration step of the grievance process.

The Officers therefore filed suit in district court, asking for a declaration of the parties' rights and for appropriate orders or writs to compel the City to comply with the CBA. The parties agreed to resolve the dispute on cross-motions for summary

judgment. The trial court granted the Officers' motion for summary judgment and ordered the City to "participate in the Disciplinary Appeal Process as set forth in the Collective Bargaining Agreement filed with the Agreed Statement of Facts in this case."[1] This appeal ensued.

## II. ISSUE PRESENTED

In a single issue, the City challenges the trial court's judgment in favor of the Officers and against the City.

## III. STANDARD OF REVIEW

The parties presented cross-motions for summary judgment on undisputed facts; thus, we review the cross-motions for summary judgment by determining all legal questions presented for review. *Goebel v. Brandley*, 174 S.W.3d 359, 362 (Tex.App.-Houston [14th Dist.] 2005, pet. denied). Each party bears the burden of establishing that it is entitled to judgment as a matter of law. *Id.* Statutory construction is a question of law which we also review de novo. *City of Rockwall v. Hughes*, 246 S.W.3d 621, 625 (Tex.2008). We then render the judgment that the trial court should have rendered. *City of Garland v. Dallas Morning News*, 22 S.W.3d 351, 356–57 (Tex.2000) (plurality op.).

## IV. ANALYSIS

The City argues that the provision of the CBA permitting disciplinary actions to be appealed to a Citizen's Review Committee is void as a matter of law because (a) the City Charter gives the City Manager ex-clusive control over the hiring and firing of police officers, (b) the City cannot delegate its decision-making authority, (c) section 174.005 of the Texas Local Government Code cannot expand the City's authority, (d) section 174.005 cannot authorize unconstitutional acts, and (e) the CBA provision is unconstitutional. Because its final argument is dispositive, we do not address the City's remaining arguments.

### A. Enforceability of the "Citizen's Review Committee" Provision

The essence of the City's fifth argument is that the CBA provision authorizing an appeal of a disciplinary decision to a Citizen's Review Committee is unenforceable because it is unconstitutional. Specifically, the City contends that the Texas constitution prohibits the delegation of governmental or legislative powers to private entities such as the Citizen's Review Committee. *See* TEX. CONST. art. III, § 1.[2]

If legislative power has been delegated to a private entity, then we begin our review with the presumption that the delegation was constitutional, then analyze the delegation under the factors set forth in *Texas Boll Weevil Eradication Foundation, Inc. v. Lewellen* to determine if the presumption of constitutionality has been rebutted. 952 S.W.2d 454, 472 (Tex.1997) (analyzing a facial challenge to the constitutionality of a statute). In performing this review, we read the delegation narrowly to uphold its validity if possible. *Id.* at 475. First, however, we must determine if a private delegation of legislative power occurred.

---

1. In their motion for summary judgment, the Officers sought a declaration of their rights and the City's obligations under the CBA. In addition, they asked the trial court to issue "an order ... requiring the [City] to fulfill its contractual obligations to the police officers under the CBA pursuant to Local Government Code § 174.251, including any necessary writs, injunctions or orders to compel compli-ance with the CBA." *See* TEX. LOC. GOV'T CODE ANN. § 174.251 (Vernon 2008).

2. Although the City also cites to article XI, section 5 of the Texas Constitution (addressing home rule cities), the assertion of the "nondelegation doctrine" is founded on the separation of powers. *Proctor v. Andrews*, 972 S.W.2d 729, 732–33 (Tex.1998).

## 1. Private Delegation

■ Appellees argue that delegation to the Citizen's Review Committee is permissible because it is not a "private delegation." *But cf. id.* at 469 (differentiating delegation "to a private individual or group" from delegation to "another department or agency of government"). The CBA describes the formation of the Committee as follows:

If a disciplinary action is appealed to the Citizen's Review Committee, the [Santa Fe Police Officers'] Association and the City shall each appoint one member to the Committee. The two appointees shall attempt to agree upon a third member within five days of appointment. In the event they are unable to agree, each will submit the names of two prospective committee members and the third member will be determined by drawing from those four names. All appoint [sic] must be residents of the City and must have been registered to vote at the time the incident which is being appealed occurred. No appointee shall be a relative of any employee or elected official of the City, however, elected officials themselves may be appointed.

CBA, art. XX, § 3(A). The CBA further provides:

The conduct of hearings under this Article shall be governed by the rulings of the Committee. In the event of a dispute concerning the presentation of certain evidence or testimony of witnesses, the Committee's ruling shall resolve the dispute.

The Citizens' Review Committee shall have all the power to overturn, reduce, or uphold suspensions, terminations, and demotions. The decision of the Citizen's Review Committee is final and not subject to appeal.

CBA, art. XX, § 3(B). Thus, the Committee is composed of City residents whose powers are defined by contract rather than by legislation; who are appointed for particular proceedings; and who devise their own methods to produce non-reviewable decisions.

Based on the foregoing, we conclude that Citizens Review Committee is a private group exercising broad delegated powers. We next address the nature of those powers.

## 2. Legislative Power

■ A delegation of legislative power occurs when an entity is given a public duty and the discretion to set public policy, promulgate rules to achieve that policy, or ascertain conditions upon which existing laws will apply. *FM Props. Operating Co. v. City of Austin,* 22 S.W.3d 868, 879–80 (Tex.2000). Relying on *City of Garland v. Byrd,*[3] the City contends that the powers delegated to the Committee are legislative, and that such legislative powers cannot be delegated.

Although we disagree with the City's assertion that legislative powers are nondelegable by nature,[4] we agree that the

---

**3.** 97 S.W.3d 601, 606 (Tex.App.-Dallas 2002, pet. denied).

**4.** We reject the City's argument that the City Charter grants the City Manager exclusive authority to terminate the employment of police officers. First, the powers of the City are vested in the City Council rather than the City Manager. Home Rule Charter, City of Santa Fe, Texas, art. III, §§ 3.01, 3.10. And although the Charter also permits the administration of a department by an officer appointed by the City Manager if approved by the City Council, the Charter does not address whether the City Manager or the department head is responsible for terminating the employment of subordinate employees. *See id.* art. V, §§ 5.01(b) and 5.01(c).

We must also reject the City's contention that legislative powers are necessarily nondelegable. As the Texas Supreme Court ex-

power to oversee the discipline of police officers is legislative, as *Byrd* illustrates. In that case, the City of Garland had adopted the "fire fighters' and police officers' civil service law." *See* TEX. LOC. GOV'T CODE ANN. § 143.001 et seq. (hereinafter, "Chapter 143"). Chapter 143 provides for the establishment of a Fire Fighters' and Police Officers' Civil Service Commission, and allows a police officer who has been suspended indefinitely to appeal to the Commission or to a private hearing examiner. *Id.* §§ 143.053 (appeal to the Commission), 143.057 (appeal to an independent third-party hearing examiner). The City of Garland argued that section 143.057 permitting an appeal to a private examiner constituted an unconstitutional delegation of legislative power. *Byrd,* 97 S.W.3d at 605. In considering this argument, the Fifth Court of Appeals reasoned as follows:

> When the commission holds a hearing and renders a decision on the suspension of a police officer or fire fighter, it is making an administrative decision regarding the discipline of an employee. Although the method employed by the commission to make its decision is similar to that used by courts, the decision itself is not judicial, but an exercise of the supervisory powers delegated to it by the legislature. The commission is simply employing the tools granted to it by chapter 143 to apply and enforce the rules and regulations governing disciplinary actions.
>
> When a private hearing examiner steps into the shoes of the commission and conducts a disciplinary hearing, the power being exercised is the same as that exercised by the commission. It is the

power delegated by the legislature to oversee the discipline of police officers and fire fighters. We conclude, therefore, that the power delegated to the private hearing examiner under section 143.057 is legislative rather than judicial.

*Id.* (citations omitted). For reasons similar to those set forth in *Byrd,* we conclude that the powers delegated to the Citizen's Review Committee are legislative. *See also City of LaPorte v. Barfield,* 898 S.W.2d 288, 291 (Tex.1995) ("[T]he hiring and firing of city employees is clearly a governmental function."). And although the powers delegated here were assigned by contract rather than by legislation, the legislative nature of these powers is unchanged.

Having determined that the Citizen's Review Committee acts through a private delegation of legislative power, we next determine if the delegation is constitutional.

**B. Constitutionality Factors**

 Although the delegation of legislative powers may be desirable or even necessary in some cases, private delegations raise "troubling constitutional issues." *Tex. Boll Weevil,* 952 S.W.2d at 469. As the Texas Supreme Court explained:

> On a practical basis, the private delegate may have a personal or pecuniary interest which is inconsistent with or repugnant to the public interest to be served. More fundamentally, the basic concept of democratic rule under a republican form of government is compromised when public powers are abandoned to those who are neither elected by the people, appointed by a public official or

---

plained in *Texas Boll Weevil,* "[e]ven in a simple society, a legislative body would be hard put to contend with every detail involved in carrying out its laws; in a complex society it is absolutely impossible to do so. Hence,

legislative delegation of power to enforce and apply law is both necessary and proper." 952 S.W.2d at 466 (citing *Field v. Clark,* 143 U.S. 649, 693–94, 12 S.Ct. 495, 504–05, 36 L.Ed. 294 (1892)).

entity, nor employed by the government. Thus, we believe it axiomatic that courts should subject private delegations to a more searching scrutiny than their public counterparts.

*Id.* To determine whether a private delegation of legislative power is constitutional, we consider the following factors:

1. Are the private delegate's actions subject to meaningful review by a state agency or other branch of state government?

2. Are the persons affected by the private delegate's actions adequately represented in the decision-making process?

3. Is the private delegate's power limited to making rules, or does the delegate also apply the law to particular individuals?

4. Does the private delegate have a pecuniary or other personal interest that may conflict with its public function?

5. Is the private delegate empowered to define criminal acts or impose criminal sanctions?

6. Is the delegation narrow in duration, extent, and subject matter?

7. Does the private delegate possess special qualifications or training for the task delegated to it?

8. Has the Legislature provided sufficient standards to guide the private delegate in its work?

*Id.* at 472. In assessing these factors, we are mindful that delegations to private entities "are subject to more stringent requirements and less judicial deference than public delegations." *FM Props. Operating Co.*, 22 S.W.3d at 874; *see also Proctor*, 972 S.W.2d at 735; *Tex. Boll Weevil*, 952 S.W.2d at 469–70.

After assessing these factors under the relevant standard of review, we have determined that, for the reasons discussed below, six of the eight *Boll Weevil* factors weigh heavily against a conclusion of constitutionality.

### 1. No Meaningful Review

To determine the extent of "meaningful review," a comparison may be helpful. If the City of Santa Fe had adopted chapter 143 of the Local Government Code, then disciplined officers could choose to appeal to an independent hearing examiner. The hearing examiner's decision would be "final and binding on all parties" except for a statutory exception. Specifically, a hearing examiner's award could be appealed to the district court "on the grounds that the arbitration panel was without jurisdiction or exceeded its jurisdiction or that the order was procured by fraud, collusion, or other unlawful means." Tex. Loc. Gov't Code Ann. § 143.057.

In contrast, "[t]he decision of the Citizen's Review Committee is final and *not subject to appeal.*" (emphasis added). Thus, there is no analogous remedy for a decision that is arbitrary and capricious, beyond the Committee's jurisdiction, or fraudulently obtained. In brief, the Citizen's Review Committee is subject to "the arbitrary exercise of power." *See Tex. Boll Weevil*, 952 S.W.2d at 471 (quoting *Office of Public Ins. Counsel v. Tex. Auto. Ins. Plan*, 860 S.W.2d 231, 237 (Tex.App.-Austin 1993, writ denied)).

### 2. Adequacy of Representation

The CBA offers no assurance that the affected parties will be adequately represented. The CBA provides that "[t]he appealing officer or his representative may present testimony, examine and cross-examine witnesses, and submit any other evidence that is pertinent to the hearing." But unlike hearings before a commission acting pursuant to chapter 143 of the Local Government Code, the hearings described in the CBA are governed by the

rules created and interpreted by the Committee, and contain no requirement that the officer's representative be allowed to attend. *Cf.* TEX. LOC. GOV'T CODE ANN. § 143.010(c) ("In each hearing, appeal, or review of any kind in which the commission performs an adjudicatory function, the affected fire fighter or police officer *is entitled to be represented* by counsel or a person the fire fighter or police officer chooses.") (emphasis added); *Byrd,* 97 S.W.3d at 608 (relying in part on section 143.010(c) in concluding that employees were adequately represented in the decision-making process). Thus, this factor weighs against a finding of constitutionality.

### 3. *Rule-making Authority*

Contrary to the Officers' contentions, the Committee also has rule-making authority and applies those rules to particular individuals. Specifically, the CBA permits the Committee to hold hearings under rules of its own devising: "The conduct of hearings under this Article shall be governed by the rulings of the Committee. In the event of a dispute concerning the presentation of certain evidence or testimony of witnesses, the Committee's ruling shall resolve the dispute." The Committee then applies these rules to the particular officers appearing before it:

> The award of the Citizen's Review Committee shall state which particular factual charges it finds to be true, if any, and the particular rules it finds such conduct to have violated, if any. Where the charges are upheld, the award shall state whether the discipline imposed is upheld, or whether some lesser discipline or no discipline is substituted.... The Citizen's Review Committee shall have all the power to overturn, reduce, or uphold suspensions, terminations, and demotions.[5]

Thus, the Committee may create rules tailored to reach a particular outcome in the case before it. *Cf.* TEX. LOC. GOV'T CODE ANN. § 143.010(g) (Vernon 2008) ("The commission shall conduct the hearing fairly and impartially as prescribed by this chapter and shall render a just and fair decision. The commission may consider only the evidence submitted at the hearing."); *Blair v. Razis,* 926 S.W.2d 784, 789 (Tex.App.-Tyler 1996, no writ) (holding that "hearing examiners referred to in section 143.057, TEX. LOC. GOV'T CODE have the same obligation to follow precedent Texas court case law as a Civil Service Commission"). This factor is another indication that the CBA provision is unconstitutional.

### 4. *Conflicting Interests*

Although both the Officers and the City participate in selecting Committee members, the appointment process under the CBA allows the parties to staff the Committee entirely with interested parties. *Cf.* TEX. LOC. GOV'T CODE ANN. § 143.057(d) (under Chapter 143, if parties do not agree to the selection of an "impartial hearing examiner," then the selection is made from "a list of seven qualified neutral arbitrators from the American Arbitration Association or the Federal Mediation and Conciliation Service"); *Proctor,* 972 S.W.2d at 736 (noting that the American Arbitration Association and the Federal Mediation and Conciliation Service "are highly respected entities with expertise in the area of arbitration" and "have no private interest at stake"). The CBA does not refer to Committee members as "disinterested," "impartial," or "neutral," and the appointees are not chosen by a process involving public consent. *Cf. Tex. Boll Weevil,* 952 S.W.2d at 471–72. No special training or qualifications are required, and appointees are not required to swear an oath to up-

---

5. CBA, art. XX, § 3(B).

hold the law. This is another factor weighing against constitutionality.

### 5. Criminal Acts or Sanctions

The Committee is not authorized to define criminal acts or impose criminal sanctions. However, this is one of only two factors that do not weigh in favor of the conclusion that the Citizen's Review Committee exercises an unconstitutional delegation of legislative power.

### 6. Duration, Extent, and Subject Matter

The work of a given Citizen's Review Committee is limited in duration, extent, and subject matter. Because the work of the Committee is limited in time and scope to the particular proceeding before it, this factor does not undermine the constitutionality of the delegation. See Byrd, 97 S.W.3d at 609 ("A delegation that is narrow in duration, extent, and subject matter raises fewer constitutional concerns.").

### 7. Qualifications or Training

The sole qualifications to serve on the Citizen's Review Committee are that the appointee (a) is currently a resident of the City; (b) was registered to vote at the time the incident being appealed occurred; and (c) is not a relative of an employee or elected official of the City, although elected officials themselves may be appointed. The CBA provides no means to discover or disqualify an appointee for actual bias. In addition, no training or experience is required. Appointees are not required to be familiar or become familiar with the rules of evidence, standards governing police conduct, the policies and agreements governing the officer's employment, or methods or procedures for arbitration or mediation. Cf. id. (holding that this factor weighs in favor of constitutionality where the hearing examiner is an experienced arbitrator). This is yet another factor indicating unconstitutionality.

### 8. Guiding Standards

Under the CBA, the Committee is guided almost entirely by the standards it creates for itself. The CBA provides:

> The City shall be required to prove by a preponderance of the evidence that the discipline imposed was for just cause. The appealing officer or his representative may present testimony, examine and cross-examine witnesses, and submit any other evidence that is pertinent to the hearing. The City agrees that it will assist in making available witnesses who are employed by the City.

Because the Committee receives no other evidentiary guidelines and may make its rulings without concern for review, biased appointees may reach a predetermined outcome while still complying with these requirements.

### C. Delegation Unconstitutional

■ We recognize that courts must use the "nondelegation doctrine" sparingly; thus, we consider legislative delegations narrowly to uphold their validity when possible. Tex. Boll Weevil, 952 S.W.2d at 475. Yet we have also been warned to guard against "'allowing delegation of power to exercise unguided discretion in individual cases . . . .'" Id. at 466 (quoting KENNETH CULP DAVIS, 1 ADMINISTRATIVE LAW TREATISE § 3.1, at 150 (2d ed. 1978)). This is precisely the situation presented by an appeal to the Committee as described in the CBA. The availability of meaningful review is particularly important in the analysis of delegation to private interested parties,[6] but here, the Committee acts with "unguided discretion," without "meaningful review" and without a requirement that its members be disinterested. Because the Texas Boll Weevil factors weigh heavily against this provision, we conclude that the provision violates the Texas Constitution.

---

6. FM Props., 22 S.W.3d at 880.

Thus, the City cannot be lawfully required to comply with this provision of the CBA.

### V. CONCLUSION

We hold that an appeal to a Citizen's Review Committee as described in article XX, section 3 of the 2002–2003 collective bargaining agreement between the City and the Santa Fe Police Officers' Association constitutes an unconstitutional private delegation of legislative power. We therefore reverse the judgment of the trial court and render declaratory judgment that this provision of the CBA is void, and thus, unenforceable.