

# Fourth Court of Appeals
## San Antonio, Texas

### OPINION

No. 04-21-00208-CV

Richard **PAMPLIN** and Networth Cashflow Systems, LLC,
Appellants

v.

Kelly **STEPHENSON**, Trustee of the Coffee Time, Inc. 401k (PSP) and
Craig Noack, Court-Appointed Turnover Receiver,
Appellees

From the 438th Judicial District Court, Bexar County, Texas
Trial Court No. 2011CI05138
Honorable Aaron Haas, Judge Presiding

Opinion by:    Patricia O. Alvarez, Justice

Sitting:    Patricia O. Alvarez, Justice
Luz Elena D. Chapa, Justice
Lori I. Valenzuela, Justice

Delivered and Filed: March 29, 2023

AFFIRMED

This is an appeal of the trial court's order approving the receiver's request to distribute the

judgment debtor's commission payments to the judgment creditor.  The judgment debtor argues

that we have jurisdiction to hear this appeal, and the commission payments are exempt from seizure

because they are compensation for personal services.  We agree that we have jurisdiction, but the

payments were not exempt.  Therefore, we affirm the trial court's order.

## BACKGROUND

In January 2011, Appellee Kelly Stephenson, trustee of the Coffee Time, Inc. 401k (PSP),[1] was granted a default judgment against Richard Pamplin and Networth Cashflow Systems, LLC (collectively Pamplin), in a Kansas district court for the sum of $99,000.00 plus interest and attorney's fees.

Subsequently, in a Bexar County district court, Stephenson filed an affidavit and notice of filing a foreign judgment. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 35.004. The judgment was domesticated, and an abstract of judgment was filed in the Bexar County real property records.

After Stephenson's collection efforts were unsuccessful, in October 2014, the trial court signed a turnover order and appointed a receiver. In 2018, the trial court appointed a substitute receiver.

The Receiver seized funds payable to Pamplin from LifeVantage, a multilevel marketing company that uses independent distributors to sell LifeVantage products. On January 25, 2021, the Receiver filed a Verified Motion to Approve Distributions, Fees, and Ongoing Receivership (Limited Receivership) to turn over funds to Stephenson. The motion asserted that the LifeVantage funds were not exempt from seizure, and it asked for permission to distribute the funds to Stephenson. Pamplin objected to the motion.

After a hearing, the trial court issued its order approving the distributions, fees, and ongoing receivership. Pamplin appeals.

---

[1] The Internal Revenue Service notes "[a] 401(k) plan is a qualified plan that includes a feature allowing an employee to elect to have the employer contribute a portion of the employee's wages to an individual account under the plan" and includes plans such as a profit-sharing plan. *401(k) Plan Overview*, IRS, https://www.irs.gov/retirement-plans/plan-sponsor/401k-plan-overview (last visited Mar. 17, 2023). The clerk's record identifies the trust as the "Coffee Time, Inc. 401k (PSP)"; we refer to the trust using the title from the record.

**JURISDICTION**

Before the briefs were filed, we questioned our jurisdiction in this appeal, and we ordered Pamplin to show cause why we have jurisdiction. After considering the response, we advised the parties the jurisdictional issue would be carried with the appeal and the parties should address the issue in their briefs.

**A.      Pamplin's Arguments**

Pamplin argues that the trial court's disbursement order made a determination of a property right—his payments from LifeVantage—and it is a mandatory injunction to continue to allow the Receiver to collect and seize exempt funds and turn them over to Stephenson, the judgment creditor. Because the order resolves property rights and acts as a mandatory injunction, it is a final and appealable order.

**B.      Appellees' Arguments**

The Receiver and Stephenson (Appellees) argue the trial court's disbursement order did not make a determination of competing substantive ownership rights or enjoin Pamplin, the judgment debtor. They argue the disbursement order was merely enforcing the trial court's prior order and it did not materially change the substantive portions of the judgment. Therefore, the disbursement order is administrative, nonadjudicative, and not appealable.

**C.      Mandatory Injunction Appealable**

Generally, a trial court has continuing jurisdiction to enforce its judgments, and to do so, it may issue post-judgment orders. *See Alexander Dubose Jefferson & Townsend LLP v. Chevron Phillips Chem. Co., L.P.*, 540 S.W.3d 577, 581 (Tex. 2018) (per curiam); *Arndt v. Farris*, 633 S.W.2d 497, 499 (Tex. 1982).

"Post-judgment orders are appealable only if the appeal is statutorily authorized or if the trial court's order operates as a mandatory injunction resolving property rights and imposing

obligations on the judgment debtor or third party to transfer property to the judgment creditor." *Transcon. Realty Inv'rs, Inc. v. Orix Capital Markets LLC*, 470 S.W.3d 844, 846 (Tex. App.—Dallas 2015, no pet.) (citing *Jack M. Sanders Family Ltd. P'ship v. Roger T. Fridholm Revocable, Living Tr.*, 434 S.W.3d 236, 242 (Tex. App.—Houston [1st Dist.] 2014, no pet.)). For example, "a turnover order that functions as a mandatory injunction is a final, appealable judgment." *Alexander Dubose*, 540 S.W.3d at 586; *accord Transcon. Realty Inv'rs*, 470 S.W.3d at 846.

If a post-judgment order that acts as a mandatory injunction and decides property rights was not appealable, the judgment debtor and any enjoined third parties could be left with "no right of appellate review to protect their affected property interests." *See Schultz v. Fifth Jud. Dist. Ct. of Appeals at Dall.*, 810 S.W.2d 738, 740 (Tex. 1991), *abrogated on other grounds by In re Sheshtawy*, 154 S.W.3d 114 (Tex. 2004).

## D. Turnover Order

In this case, the turnover order appointed a receiver, and it declares that "all of the Judgment Debtor's non-exempt property becomes property in *custodia legis*, or 'in the custody of the law.'" It orders that "[t]he Receivership has a judicial lien on all non-exempt assets of all defendants, regardless of whether the Receiver takes actual possession." It requires Pamplin to turn over to the Receiver "all non-exempt funds to the extent required to satisfy the Judgment." And it authorizes the Receiver to "collect[] all accounts receivable, . . . [and] [e]ndorse and cash all checks and negotiable instruments payable to Defendants, except paychecks for current wages."

## E. Order Approving Distribution, Fees, and Ongoing Receivership

The turnover order addresses personal property by categories, such as accounts receivable. It does not identify specific assets or resolve competing claims to specific assets, such as the LifeVantage payments.

The distribution approval order—which approved the Receiver's motion to distribute the seized LifeVantage payments to the judgment creditor—was the first judicial determination that the LifeVantage payments were not exempt from seizure. It resolved Pamplin's property rights to the LifeVantage payments, and it effectively required LifeVantage to transfer Pamplin's commission payments to the Receiver and the Receiver to transfer the funds to the judgment creditor. *See Alexander Dubose*, 540 S.W.3d at 588 (concluding that a post-turnover order that "was the first determination of competing substantive ownership rights" was appealable); *Transcon. Realty Inv'rs*, 470 S.W.3d at 846 (recognizing that the portion of a post-judgment turnover order that resolved property rights and imposed obligations on a third party was an appealable order).

If we were to conclude the distribution order was not appealable, Pamplin and others similarly situated would "be left with 'no right of appellate review to protect their affected property interests,'" *see Schultz*, 810 S.W.2d at 740, and we cannot adopt such reasoning.

Following *Alexander Dubose* and considering *Transcontinental Realty Investors*, we hold that the trial court's order approving the distribution of the LifeVantage payments determined competing substantive ownership rights and was appealable. *See Alexander Dubose*, 540 S.W.3d at 588; *Transcon. Realty Inv'rs*, 470 S.W.3d at 846. We conclude we have jurisdiction in this appeal.

We turn now to whether the LifeVantage payments were exempt from seizure.

### NATURE OF LIFEVANTAGE PAYMENTS

In his second issue, Pamplin argues the LifeVantage payments were exempt from seizure because they were current wages for personal services. In his third issue, Pamplin argues the payments were exempt from seizure because they were unpaid commissions for personal services,

and they did not exceed the aggregate limitations. Because the same facts underlie both issues, we consider the issues together.

## A. Additional Background

### 1. Receiver's Motion to Approve Distributions, Fees, and Ongoing Receivership

In his January 2021 motion, the Receiver addressed the LifeVantage payments.

> Receiver has identified these assets as not being subject to exemption. Receiver believes these funds to not be personal services but commissions earned from Life Vantage because [they are] earnings from sales of Life Vantage products.
>
> Further, the amount of funds received by Defendant over the years is over the cap permitted and it is on Defendant to demonstrate that these are exempt funds.

### 2. Hearing on Motion, Evidence

At the hearing on the Receiver's motion, the Receiver argued Pamplin was not an employee: He was an independent contractor, and the sales commissions he received were business income. The Receiver called Pamplin to testify.

Pamplin testified that he was paid by LifeVantage under a multilevel marketing Sales Compensation Plan. Under the plan, Pamplin is paid commissions for sales he or his distributors make. If he or his distributors sell products, he gets paid a commission; if there are no product sales, he is not paid anything by LifeVantage. Further, LifeVantage does not supervise his daily activities, and he does not report his daily activities to them.

Pamplin was also examined about his tax documents, which were admitted into evidence. Pamplin confirmed that he did not receive an annual Form W-2, Wage and Tax Statement, from LifeVantage. Instead, LifeVantage sends him an annual Form 1099-MISC, Miscellaneous Income, to show how much they paid him in the previous calendar year.

On his federal tax returns, Pamplin reported his earnings from LifeVantage on Form 1040, Schedule C, Profit or Loss From Business. His 2014 Schedule C identified his business as an

"indipendent [sic] contractor and trainer" and his business name as "Lifevantage indipendent [sic] distributor." Subsequent Schedules C identified his business as "sales and training" and gave his business name as "LifeVantage Distributor."

Before we discuss the parties' arguments, we briefly recite the applicable law and standard of review.

**B.      Applicable Law**

The Texas Property Code exempts certain types of personal property from seizure. TEX. PROP. CODE ANN. § 42.001; *see Dalton v. Dalton*, 551 S.W.3d 126, 145 (Tex. 2018) (Lehrmann, J., concurring); *Caulley v. Caulley*, 806 S.W.2d 795, 798 (Tex. 1991).

Specifically, "current wages for personal services" are exempt from seizure. TEX. PROP. CODE ANN. § 42.001(b); *Goebel v. Brandley*, 174 S.W.3d 359, 363 (Tex. App.—Houston [14th Dist.] 2005, pet. denied) ("Section 42.001 of the Property Code expressly provides that 'current wages' are exempt from garnishment, attachment, or execution.").

Similarly, "[u]npaid commissions for personal services [up to a specified limit] are [also] exempt from seizure." TEX. PROP. CODE ANN. § 42.001(d); *accord Leibman v. Grand*, 981 S.W.2d 426, 434–35 (Tex. App.—El Paso 1998, no pet.).

Whether for current wages or unpaid commissions, to be exempt from seizure, the compensation must be for personal services. *See* TEX. PROP. CODE ANN. § 42.001(b), (d); *Goebel*, 174 S.W.3d at 363 (current wages); *Leibman*, 981 S.W.2d at 435 (unpaid commissions); *Davidson Tex., Inc. v. Garcia*, 664 S.W.2d 791, 793 (Tex. App.—Austin 1984, no writ) (noting for wages or commissions, exemption is determined by "whether it is compensation for personal service").

Compensation for personal services "necessarily implies a relationship of master and servant, or employer and employee." *See Campbell v. Stucki*, 220 S.W.3d 562, 566–67 (Tex. App.—Tyler 2007, no pet.) (quoting *Brasher v. Carnation Co. of Tex.*, 92 S.W.2d 573, 575 (Tex.

App.—Austin 1936, writ dism'd)); *Ross v. 3D Tower Ltd.*, 824 S.W.2d 270, 273 (Tex. App.—Houston [14th Dist.] 1992, writ denied).

But where no employer-employee relationship exists, such as where an independent contractor receives sales commissions, the compensation is not exempt from seizure. *See Campbell*, 220 S.W.3d at 566–67; *Brasher*, 92 S.W.2d at 575; *see also In re Perciavalle*, 92 B.R. 688, 689 (Bankr. W.D. Tex. 1988) ("The Texas Courts define 'current wages' . . . to be compensation due to an employee in a master-servant relationship. The definition expressly excludes money received by an independent contractor." (citing an earlier version of the Property Code)).

## C.    Standard of Review

We review a trial court's order that acts as a mandatory injunction and resolves a property right for an abuse of discretion. *See Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 204 (Tex. 2002) ("A reviewing court should reverse an order granting injunctive relief only if the trial court abused that discretion."); *Beaumont Bank, N.A. v. Buller*, 806 S.W.2d 223, 226 (Tex. 1991) (applying an abuse of discretion standard of review to a turnover order).

"Under an abuse of discretion standard, legal and factual sufficiency are relevant factors in assessing whether the trial court abused its discretion." *Zeptner v. Zeptner*, 111 S.W.3d 727, 734 (Tex. App.—Fort Worth 2003, no pet.) (citing *Beaumont Bank*, 806 S.W.2d at 226).

When we conduct sufficiency of the evidence reviews, where the trial court is the factfinder but no written findings of fact and conclusions of law were requested and none were made, we will imply all necessary findings in favor of the trial court's ruling. *See BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 795 (Tex. 2002) (citing *Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex. 1990) (per curiam)). *See generally* W. Wendell Hall & Ryan G. Anderson, *Standards of Review in Texas*, 50 St. Mary's L.J. 1099, 1159 (2019).

Nevertheless, "[w]hen the appellate record includes the reporter's and clerk's records, these implied findings are not conclusive and may be challenged for legal and factual sufficiency in the appropriate appellate court." *BMC Software*, 83 S.W.3d at 795 (citing *Roberson v. Robinson*, 768 S.W.2d 280, 281 (Tex. 1989) (per curiam)); *accord Sixth RMA Partners, L.P. v. Sibley*, 111 S.W.3d 46, 52 (Tex. 2003).

**D.      Current Wages for Personal Services**

In his second issue, Pamplin argues his payments from LifeVantage are wages for personal services.

*1.      Daily Activities, Compensation Plan*

Pamplin testified to how much time he worked each day, his need to maintain regular contact with his customers and distributors, and he concluded that his LifeVantage earnings were wages for personal services. However, he noted that LifeVantage does not control his daily schedule or activities, and he does not report them to LifeVantage. He also acknowledged that he was paid under a multi-level marketing Sales Compensation Plan. Under the plan, regardless of how much time he spent servicing his customers and distributors, if he and his distributors did not sell products, he would not be paid anything.

*2.      LifeVantage Compensation Forms*

Pamplin testified that he did not receive an annual Form W-2, Wage and Tax Statement. *See Form 1099 NEC & Independent Contractors*, IRS, https://www.irs.gov/faqs/small-business-self-employed-other-business/form-1099-nec-independent-contractors/form-1099-nec-independent-contractors ("Employers use Form W-2, Wage and Tax Statement to: Report wages, tips, and other compensation **paid to an employee**.") (last visited Mar. 17, 2023). Instead, LifeVantage reported their payments to him on Form 1099-MISC, Miscellaneous Information.

These records show that LifeVantage did not treat its commission payments to Pamplin as wages for personal services. *Cf. In re Baehr*, No. 15-10452, 2015 WL 7179861, at *2 (Bankr. E.D. La. Nov. 13, 2015) ("That the money [the bankrupt] received in 2012 was not wages is evidenced by the fact that [the bankrupt] did not receive a Form W–2 Wage and Tax Statement for 2012. Instead, a 2012 Form 1099 was issued, designating the money [the bankrupt] received as miscellaneous income.").

### 3. *Pamplin's Tax Returns*

Further, all of Pamplin's tax returns that were admitted as evidence showed Pamplin reported his payments from LifeVantage as business income on his Schedule C, not as salary or wages. *See Campbell*, 220 S.W.3d at 566–67 (stating that Property Code section 42.001(b)(1)'s term '[current] wages for personal service' necessarily implies a relationship of master and servant, or employer and employee, and excludes compensation due to an independent contractor as such").

### 4. *Not Wages for Personal Services*

Having reviewed all the evidence, we conclude the record supports the trial court's implied finding that LifeVantage's payments to Pamplin were not current wages for personal services. *See* TEX. PROP. CODE ANN. § 42.001(b)(1); *Campbell*, 220 S.W.3d at 566–67; *Goebel*, 174 S.W.3d at 363; *In re Baehr*, 2015 WL 7179861, at *2.

## E. Unpaid Commissions for Personal Services

In his third issue, Pamplin argues that the LifeVantage payments were unpaid commissions for personal services. *See* TEX. PROP. CODE ANN. § 42.001(d) (unpaid commissions); *Leibman*, 981 S.W.2d at 435.

Pamplin testified that he was paid only for product sales, and he confirmed that LifeVantage's multi-level marketing Sales Compensation Plan applied to him.

Having reviewed all the evidence, we conclude the record supports the trial court's implied finding that LifeVantage's payments to Pamplin were commissions. *See Campbell*, 220 S.W.3d at 566–67; *Leibman*, 981 S.W.2d at 435.

But that does not end our analysis; the evidence also shows that the commissions were solely for product sales. Pamplin's testimony and his tax returns show Pamplin was acting as an independent LifeVantage distributor, not as a LifeVantage employee. Thus, we also conclude the record supports the trial court's implied finding that LifeVantage's commission payments to Pamplin were not compensation for personal services. *See Campbell*, 220 S.W.3d at 566–67; *Brasher*, 92 S.W.2d at 575.

**F.     No Abuse of Discretion**

It was Pamplin's burden to prove that LifeVantage's payments were exempt from seizure. *See Stanley v. Reef Sec., Inc.*, 314 S.W.3d 659, 667 (Tex. App.—Dallas 2010, no pet.) ("Once a judgment creditor proves that a judgment debtor owns property, it is the judgment debtor's burden to prove that the property is exempt from attachment."). However, the evidence was more than legally and factually sufficient to support the trial court's implied finding that the payments were not compensation—either wages or commissions—for personal services. *See Campbell*, 220 S.W.3d at 566–67; *Brasher*, 92 S.W.2d at 575.

We conclude that the trial court did not abuse its discretion in determining that the LifeVantage payments were not exempt from seizure. *See Beaumont Bank*, 806 S.W.2d at 226. We overrule Pamplin's second and third issues.

**CONCLUSION**

The trial court's order approving the distribution of the seized LifeVantage commission payments determined competing substantive ownership rights and effectively required the Receiver to distribute the LifeVantage commission payments to Stephenson, the judgment

creditor.  As the equivalent of a mandatory injunction that determined property rights, the order was appealable, and we have jurisdiction to determine the nature of the payments.

The sales commission payments from LifeVantage to Pamplin were not compensation for personal services, and thus they were not exempt from seizure.  Therefore, the trial court did not abuse its discretion in approving the Receiver's request for permission to distribute the LifeVantage payments to Stephenson.

Accordingly, we affirm the trial court's order.


Patricia O. Alvarez, Justice